SUMMIT SILK COMPANY v. KINSTON SPINNING COMPANY.

(Filed 29 March, 1911.)

1. Equity—Remedy at Law—Code Practice.

Under our Code system of practice, pleadings, and procedure, it is unnecessary for a party seeking equitable relief to first reduce his demand to judgment, or exhaust his legal remedy by execution or other appropriate process.

2. Corporations—Insolvency—Application—Creditors.

When a corporation is insolvent or in imminent danger of insolvency, and especially when its business operations have practically been suspended owing to its financial condition, the court may, upon proper application of a creditor or stockholder, appoint a receiver of its assets to be administered for the benefit of all of its creditors. Revisal, secs. 847, 1219, 1203.

3. Same—Trust Fund.

In its action for the recovery of a certain plant or machine, damages for its detention and for a receiver of the defendant company, the plaintiff alleged that the defendant falsely represented its capital stock to be $50,000 and had failed in the performance of its contract of purchase of the machinery to increase its capital stock, as agreed upon, by the issuance of common and preferred stock, of which the plaintiff was to receive a certain part as payment, the title to the machinery to remain in the plaintiff vendor until the agreement was performed. Upon the pleadings and proof his Honor found as a fact that the plaintiff had shown an apparent right to the machinery in question and

that it was or should be in defendant's possession, and that the machinery had a specified value, and the rents and profits thereof were in danger of being lost; that the defendant was insolvent and indebted to the plaintiff and others: *Held*, the creditors were entitled to have the defendant corporation's assets preserved and administered for their benefit, and that a receiver for that purpose was proper.

4. **Corporations—Insolvency—Receivers—Application—Creditors—Definition.**

Any one who has a debt or demand against an insolvent corporation upon contract, express or implied, comes within the meaning of the word "creditor," used in the statute, and may apply to the courts and obtain, in proper instances, the appointment of a receiver for the corporation.

5. **Foreign Corporations—Insolvency—Receivers—Property Here—Procedure.**

An insolvent corporation, with its property or plant located in this State, is subject to the appointment by our courts of a receiver to take charge of its assets here and administer them as a trust fund for its creditors, though incorporated under the laws of another State, approving *Holshouser v. Copper Co.*, 138 N. C., 248.

6. **Corporations—Insolvency—Receivers—Pleadings—Relief Granted.**

It appears in this case from the facts alleged in, and the general scope of, the complaint, that the relief should not be restricted to the exact prayer of the complaint, but should be extended so as to afford relief which is commensurate with the averments, under the familiar rule that it is not the language of the prayer, but the allegations of the pleading that determine the extent of the relief to be granted.

APPEAL from order appointing a receiver in an action from LENOIR, made by *O. H. Allen, J.,* at chambers, in Kinston, 15 February, 1911.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*Loftin, Varser & Dawson for plaintiff.*
*G. V. Cowper and H. E. Shaw for defendant.*

WALKER, J. Plaintiffs allege that they contracted to sell to the defendant, Kinston Spinning Company, what is known as.

a "Throwing Machinery Plant," which is used in the manufacture of certain kinds of silk products, upon the understanding and agreement that the Spinning Company should increase its capital stock from the amount ($50,000) it was then represented to be, to $80,000, and that said capital stock, when so increased, should be divided into preferred stock to the amount of $30,000 and common stock to the amount of $50,000, the plaintiff, G. W. Graham Company, to receive, as its part of said stock, preferred shares of the par value of $12,000, and shares of common stock of the par value of $25,000, the balance of the preferred and common stock to be issued to William H. Ashley, and that when this arrangement was perfected and the stock issued in accordance with the said agreement, the "Throwing Machinery Plant" should become the property of the Kinston Spinning Company, and in the meantime the title to remain in the plaintiffs or the G. W. Graham Company. That the machinery plant was delivered under this agreement to the Spinning Company, who receipted for it as the property of the G. W. Graham Company. It is further alleged that the Spinning Company, by its officers or agents, who acted for it in the transaction, falsely represented their capital stock to be $50,000, whereas it was much less than that amount, and also falsely represented the amount and condition of its assets, and instead of being a solvent and going concern, as the plaintiffs were led to believe, it is an insolvent and crippled institution, badly managed and with no funds to conduct its business; and further, that it has repeatedly refused, upon demand, to comply with its part of the contract of sale and is really unable to do so, and that plaintiff's "machinery plant" has, by hard usage, become greatly deteriorated and diminished in value, and that plaintiffs are in imminent danger of losing the said property. That the Spinning Company has used the plant and received and enjoyed the benefits thereof for a long time, which use is reasonably worth the sum of $6,000, and that the Spinning Company is indebted to the plaintiff in that amount, and also is liable for the injury to the plant, other than ordinary wear and tear, and for its value, if delivery of the plant

to the plaintiff cannot be secured. The plaintiff demands judgment for the sum of $6,000 for the detention and use of the plant, for the recovery of the plant itself, for the appointment of a receiver to take charge of the said plant and the estate and effects of the Spinning Company, and for general relief.

The defendant denied the material allegations of the complaint, and affidavits and exhibits were filed by the respective parties, for the consideration of the judge, upon the application for the appointment of a receiver.

At a hearing before *Hon. O. H. Guion,* a temporary receiver was appointed, and the cause afterwards came before *Hon. O. H. Allen,* who upon the pleadings and proof found as a fact that plaintiff had shown an apparent right to the property, the subject of the action, which is or should be in the possession of the defendant, and that the property and the "rents and profits" thereof are in danger of being lost, the value of the Throwing Machinery Plant being $15,056. He also found as a fact that the Kinston Spinning Company is insolvent and is indebted to the plaintiff, its creditors, as above set forth, and that the Summit Silk Company, the G. W. Graham Company, plaintiffs in this action; the Kinston Spinning Company and Kinston Real Estate Company are all corporations created and existing under the laws of the State of New Jersey, the two last-named companies having real and personal property in this State. The Kinston Real Estate Company was, on motion of the plaintiffs, made a defendant, because, as the judge found, it has or claims an interest in the subject of the controversy. Upon these and other findings not material to be stated, his Honor, *Judge O. H. Allen,* made the receivership permanent, and invested the receiver, E. M. Land, with all the powers conferred by the statute (Revisal, ch. 41, sec. 846 *et seq.*), and especially with those conferred by chapter 21, entitled "Corporations," and subchapter 13 (sec. 1219 *et seq.*), with special directions to advertise for creditors to come in and prove their claims, and for all parties, including stockholders, interested in the assets of the defendant, to come in

and make themselves parties to the action and protect their rights. It was provided in the order of the court that no finding of fact made for the purpose of passing upon the motion for the appointment of a receiver should prejudice either party in the further progress and trial of the case, and that the parties should have the right of amending their pleadings. The order appointing the receiver having been duly entered and the cause retained for further orders and directions, the defendant Kinston Spinning Company excepted and appealed.

The judge, at the request of the Spinning Company, reconsidered his findings of fact, but declined to change the same, and we will not do so, there being ample evidence to support them. The objections urged by the appellant to the judge's order are:

1. That the plaintiffs had a complete and adequate remedy at law by an action for the recovery of the specific property, and damages, with the ancillary remedy of claim and delivery.

2. That a general receiver should not have been appointed, but only a special receiver to hold and preserve the property pending the litigation.

We do not understand it to be necessary, since the change in the constitution of our courts, the blending of the two systems of law and equity and the radical, though useful and practical innovations in pleading and in the practice and procedure of our courts, that a plaintiff who resorts to an equitable remedy for the protection of a right or the redress of a grievance should first reduce his claim to judgment and exhaust his legal remedy by execution or other appropriate process, as under the old system. We have held that this is not required to be done, but that the right will be administered and full relief given in one action. *Bank v. Harris,* 84 N. C., 206; *Mebane v. Layton,* 86 N. C., 574; *McLendon v. Comrs.,* 71 N. C., 38. The subject is so fully discussed in *Bank v. Harris* that we need not longer dwell upon it.

Our statute is so broad and comprehensive in its provisions regarding the appointment of receivers that it is not necessary

to refer to the general power of a court of equity in such cases. Revisal, sec. 847, provides that "A receiver may be appointed before judgment on the application of either party when he establishes an apparent right to property which is the subject of the action, and which is in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired; except in cases where judgment upon failure to answer may be had on application to the court"; and by section 1219 it is provided that, "Whenever any corporation shall become insolvent, or shall suspend its ordinary business for want of funds to carry on the same, or be in imminent danger of insolvency, or has forfeited its corporate right, or its corporate existence shall have expired by limitation, a receiver may be appointed by the court under the same regulations as are provided by law for the appointment of receivers in other cases." One of the regulations for the appointment of a receiver may be found in Revisal, sec. 1203, which is in the same chapter with section 1219. That section provides that a receiver of the property and effects of a corporation may be appointed upon application of a creditor or stockholder. Who should apply for the appointment, if not some person who is interested in the proper conduct of the corporation's affairs and the application of its assets to the payment of its debts? This remedy is provided by the statute, not merely for a creditor who has exhausted his remedy at law, but for all creditors, and any one of them is entitled to proceed against the corporation to have its assets administered by a receiver when it is insolvent or is in imminent danger of insolvency, and especially when its financial condition is such as to practically cause a suspension of its business. We deem the principle settled by our decisions. In *Holshouser v. Copper Co.,* 138 N. C., at p. 251, in a discussion of the very question now presented, we said: "The cause of action in this proceeding is that of the creditors of the Copper Company, and consists not only in the failure of the company to meet its obligations, but in the suspension of its ordinary business, which entitled the creditors to have its assets placed in the hands of the

receiver for the purpose of being applied to the payment of its debts. This proceeding is equitable in its nature, and the juris- diction of the court in respect to the claims of the creditors of the corporation must be determined, not by regarding it as a suit by each one of them for the purpose of recovering his debt, as if he had brought an ordinary civil action wherein the lia- bility would be fixed by judgment and enforced by execution, but the cause of action must be considered as one belonging to the creditors, who have the right under the statute, if not on general principles of equity, to have all the assets of the con- cern placed in the possession of the court, through its duly ap- pointed officer, to the end that the rights of all parties therein may be ascertained and distribution made accordingly. It has become the settled rule in this country that the assets of an insolvent corporation constitute a trust fund for the payment of its debts, and the remedy of its creditors by action in the nature of a suit in equity, or by what is called a creditor's bill, to have the assets administered for their benefit, is firmly established." *Hill v. Lumber Co.,* 113 N. C., 173; *Bank v. Cotton Mills,* 115 N. C., 507; *Ellett v. Newman,* 92 N. C., 519. But authority or express decision is not required to show that the power to appoint a receiver in a case like the one at the bar resides in the court, when the statute plainly and explicitly so provides. The creditors are clearly entitled to have the assets of a defendant, if an insolvent corporation, applied as a trust fund for their benefit, and it is necessary to appoint a receiver in order to preserve and administer them for this pur- pose. The defendant cannot object that the "Throwing Ma- chinery Plant" was placed in the custody of the receiver. If it is the plaintiffs' property, no prejudice can come to the de- fendant if, with their consent, it is held by the receiver until the defendant's claim to it is passed upon; and if the defend- ant's property, it is a part of its assets and its custody properly belongs to the receiver. There is a controversy as to the title of the machinery plant, and the interest of both parties will be protected if it is held and preserved until that dispute is determined.

The only remaining question to be decided in this branch of the case is whether the plaintiff is a creditor within the meaning of the statute. Any one who has a right to require the fulfillment of an obligation or contract for the payment of money is a creditor in the strict technical sense of the term— any one, in other words, who has a debt or demand against another upon contract, express or implied, for the payment of money. *Atwater v. Bank,* 45 Minn., 341 (12 L. R. A., 741). It will be found that the word "creditor" has received a broad and liberal interpretation by the courts when construing legislation in regard to the rights of claimants to satisfaction of their demands out of the assets of an insolvent corporation, or even any insolvent individual. Natural justice, it is said, demands that those who suffer from breaches of contract should be included in the distribution of the assets of the insolvent, even though the breaches and consequent damages follow the insolvency, and it is in perfect consonance with the scope and design of the legislation considered, to give its provisions a comprehensive meaning which will admit of that justice being done. *Spader v. Mfg. Co.,* 47 N. J. Eq., 18; *Anderson v. Anderson,* 64 Ala., 403; *Marstaller v. Mills,* 143 N. Y., 398; *Coal Co. v. Stevens,* 63 N. J. Eq., 107.

The last two cases just cited go beyond what is necessary for us to decide in this case, and hold that the term creditor includes not only a person who has an enforcible demand arising out of contract, but also one who has such a claim sounding in tort. In *Rosenbaum v. Credit System Co.,* 61 N. J. Eq., 543, it was held that the term "creditor" found in the legislation relating to insolvent corporations and the administration of their assets by receivers is not used in a narrow, restricted or technical sense, but embraces within its proper and natural meaning any one who is entitled to recover an amount liquidated or unliquidated, of the insolvent, as damages, for the breach of an express or implied contract. *Anderson v. Anderson, supra.* Black's Dict., p. 299. A debt is something due from one person, the debtor, to another called the creditor, and may be created by simple contract or evidenced by specialty or

(

judgment according to the nature of the obligation giving rise to it. Within any definition of the word, the plaintiff was entitled, as a creditor of the Spinning Company, to institute this action.

The defendant objects that the court had no jurisdiction to proceed in this suit against the defendants because they are foreign corporations, creatures of the laws of New Jersey. The precise question was considered in *Holshouser v. Copper Co.,* 138 N. C., at p. 254, in the appeal of the State of New Jersey, and we decided contrary to the present contention in this case. We there said: " 'If each Government in cases of insolvency should sequester and distribute the funds within its own jurisdiction, the general result would be favorable to the interest of creditors and to the harmony of nations. This is the rule adopted in all cases of administration of the property of deceased persons; and there is no real difference between the principle of those cases and of cases of bankruptcy.' . . . 'The municipal laws of a country have no force beyond its territorial limits, and when another Government permits these to be carried into effect within her jurisdiction, she does so upon a principle of comity. In doing so, care must be taken that no injury is inflicted on her own citizens; otherwise, justice would be sacrificed to courtesy; nor can the foreigner or stranger complain of this. If he sends his property within a jurisdiction different from that where he resides, he impliedly submits it to the rules and regulations in force in the country where he places it. What the law protects, it has the right to regulate.' So it is in this case. When the Copper Company was chartered and permitted to migrate from its domicile and conduct its business in this State, where it has acquired property under the protection and operation of the local laws, its assets should in all fairness be held subject to the provisions of those laws in favor of persons who have dealt with it here as a domestic corporation, which is virtually its true character, though in law it is considered as a corporation of New Jersey. *Goodwin v. Claytor,* 137 N. C., 224." The property of the Spinning Company is in this State and the laws of New Jersey should

HARDY *v.* INSURANCE CO.

not be permitted to affect its status or prejudice the rights of creditors of the corporation in respect of it. They must all come into this jurisdiction in order to have its assets administered for their benefit, and cannot get relief in the courts of New Jersey, because the property is situated here. If we should deny the remedies of our law to them, for the reason assigned by the defendant, the assets in this State would be practically exempt from the claims of creditors.

We do not think the plaintiffs should be restricted to the appointment of a special receiver, as their relief, having reference to the facts alleged in, and the general frame of, the complaint, should be of much broader scope, and must be measured, not according to the exact prayer of the complaint, if it stops short of that to which the plaintiffs are entitled upon the averments of the complaint, but should extend to all relief commensurate with such averments. *Knight v. Houghtalling,* 85 N. C., 17; *Voorhees v. Porter,* 134 N. C., 591.

A careful examination of the case in all its aspects leads us to conclude that there was no error in the judgment below.

No error.