EDWARD S. ATWATER, JR., as receiver, &c.,

*v.*

MARWOOD R. BASKERVILLE et al.

[Decided May 16th, 1918.]

1. This court may, under the sixty-fifth and sixty-sixth sections of the Corporation act, appoint a receiver of a foreign corporation found to be insolvent, notwithstanding the fact that no receiver has been appointed at the domicile of the corporation, and there are no proceedings there pending against it, and the procedure is substantially the same as upon application for the appointment of a receiver for a domestic corporation.

2. *McDermott* v. *Woodhouse, 87 N. J. Eq. 615*, distinguished.

3. Where property within this state is alleged to have been fraudulently transferred, and the alleged fraud doer is here in bankruptcy, and several of the parties defendant are residents of this state, a bill to set aside a conveyance as fraudulent may be maintained by a receiver of a corporation of another state, appointed by this court, and such bill will not affect the internal management of the affairs of such corporation within the sense of the opinion in *McDermott* v. *Woodhouse, supra.*

On bill. On order to show cause.

*Mr. Foster M. Voorhees,* for the motion.

*Mr. Clark McK. Whittemore* and *Mr. Abram S. Cornish,* contra.

LANE, V. C.

The suit is brought by the receiver of a New York corporation, appointed by this court on November 5th, 1917, against the Jersey Co-operative Realty Company, Marwood R. Baskerville, William J. Shearer, Carrie M. Shearer, his wife, Elizabeth Heights Realty Company, Benjamin A. Vail, as trustee in bankruptcy of said William J. Shearer, and the sheriff of the county of Union. It charges that on December 11th, 1915, the Jersey Co-operative Realty Company was the owner in fee of certain premises; on such day the company was insolvent and had suspended its ordinary business; for the purpose of hindering, delaying and defrauding creditors and stockholders and without consideration, defendant William J. Shearer, who was the president of the company and one of its directors, the other directors being William J. Shearer, Jr., and Armwell W. Lassell, caused the company to transfer the said premises to him; on December 24th, 1915, William J. Shearer and wife conveyed the premises to the Elizabeth Heights Realty Company, a corporation of New Jersey; the Elizabeth Heights Realty Company was a mere dummy for William J. Shearer, the directors being William J. Shearer and William J. Shearer, Jr., William J. Shearer being president and William J. Shearer, Jr., treas-

urer and secretary, William J. Shearer owning all of the issued and outstanding capital stock; at the time of the transfer the Elizabeth Heights Realty Company had full knowledge of the insolvent condition of the Jersey Co-operative Realty Company; the conveyance to the Elizabeth Heights Realty Company was made without consideration and with intent to hinder, delay and defraud the creditors of the Jersey Co-operative Realty Company; on March 7th, 1916, the Elizabeth Heights Realty Company conveyed the lands and premises, without consideration, to William J. Shearer; on March 7th, 1916, William J. Shearer and wife executed a mortgage to the defendant Marwood R. Baskerville to secure the payment of the sum of $20,000 in five years, without interest; Marwood R. Baskerville was a stockholder of the Jersey Co-operative Realty Company and had full knowledge of its insolvency and of the fraudulent nature of the transaction; on August 28th, 1916, a mortgage, theretofore held by the Mutual Life Insurance Company of New York for $3,000, was assigned to Marwood R. Baskerville; on October 12th, 1916, Baskerville instituted proceedings in this court to foreclose the last-mentioned mortgage with the result that a final decree was obtained, a writ of *fieri facias* issued and the sale advertised for November 14th, 1917; William J. Shearer on October 19th, 1916, was adjudicated a bankrupt in this district, and a trustee appointed; the complainant recognizes the validity of the mortgage previously held by the Mutual Life Insurance Company of New York; the creditors of the Jersey Co-operative Realty Company are able and willing to pay the amount due on the decree with all legal expenses and will agree not to enforce the decree until the validity of the conveyances and the second mortgage shall have been determined. The bill challenges the validity of the conveyances and of the mortgage for $20,-000 and seeks a decree setting them aside. The bill charges that if defendant Baskerville is permitted to proceed with his sale pending determination as to the validity of the conveyances and mortgage, the property will be sacrificed and the creditors and stockholders of the Jersey Co-operative Realty Company

injured. Upon the filing of the bill an order to show cause was allowed, requiring defendants to show cause why, pending the determination of the suit, the sale under the decree for foreclosure should not be stayed upon equitable terms. Upon the return of the order, there was no appearance except by the defendant Baskerville. There was no answer upon the facts. The defendant contends—*first,* that the order appointing the receiver contains no adjudication of insolvency, and is therefore void upon its face; *second,* that the court had no jurisdiction to appoint a statutory receiver for the foreign corporation in the original proceedings; *third,* that the court has no jurisdiction of the subject-matter of the action because it would result in an interference with the internal affairs of a foreign corporation.

*First.* An examination of the order appointing the receiver discloses that there does not appear therein an adjudication of insolvency. The court did, in fact, adjudicate the corporation insolvent. The omission in the order was an oversight. It may be corrected by the entry of an order *nunc pro tunc,* amending the order appointing the receiver by including therein an adjudication of insolvency.

*Second.* Sections 65 and 66 of the act concerning corporations (*Rev. 1896;* *2 Comp. Stat.* *p. 1640*) provide for the adjudication of corporations insolvent and the appointment of receivers. Section 96 provides that foreign corporations doing business in this state shall be subject to the provisions of the act so far as the same can be applied. *2 Comp. Stat. p. 1657.*

Prior to the deliverance of the opinion of the court of errors and appeals in the case of *McDermott* v. *Woodhouse, 87 N. J. Eq. 615,* it appears not to have been doubted but that this court had power to appoint a receiver of a foreign corporation under sections 65 and 66 upon a finding of insolvency, nor but that the procedure was substantially the same as upon an application for the appointment of a receiver of a domestic corporation.

In *Albert* v. *Clarendon, &c., Co., 53 N. J. Eq. 623,* the question was squarely presented. There the bill was filed against a corporation incorporated in England. The allegation was insolvency. A motion was made to dismiss. Vice-Chancellor Van

Fleet said: "The defendant is a foreign corporation. Our statute concerning corporations declares that foreign corporations doing business in this state shall be subject to its provisions so far as the same can be applied to them.  *  *  *  The meaning of that section of the statute which I have quoted seems to me to be clear. It was enacted to give this court the same jurisdiction over foreign corporations doing business in this state, when they become insolvent and have property here, that it exercises over insolvent domestic corporations, so far, at least, as should be necessary for the sequestration of their property here, and converting the same into money. To authorize this court to appoint a receiver of an insolvent foreign corporation, it is not necessary that the corporation should be engaged in carrying on its business in this state on the very day when the bill or petition is filed, but this court may take jurisdiction in any case where it is made to appear that the corporation has done business here and still has property here, although at the time when the bill or petition was filed its business here is entirely suspended. The obvious design of the statute is to give the creditors of any foreign corporation which, having done business in this state, becomes insolvent and has property here which should be administered for the benefit of its creditors, the same remedy against the corporation, in respect to its property here, that it gives to the creditors of an insolvent domestic corporation. Any other construction would, as it seems to me, defeat the main object of the statute and render it worthless."

In *National Trust Co.* v. *Miller, 33 N. J. Eq. 155* (at *p. 159*), the same learned judge had made practically the same pronouncement. He had said: "The legislative design was, unquestionably, to confer upon this court the same powers, in respect to insolvent corporations, created by foreign jurisdictions, having property in this state, that it exercised over insolvent domestic corporations, so far, at least, as the exercise of such powers was necessary to the recovery of any assets, whether legal or equitable, which should go in discharge of debts." In *Irwin* v. *Granite State Provident Association, 56 N. J. Eq. 244,* where it appeared that prior to the filing of the bill in this court there had been

a receiver or an assignee appointed in the state of the domicile of the corporation, Vice-Chancellor Reed pointed out that the receiver in this state was amenable to the direction of the court of chancery of this state and not to the direction of the domiciliary receiver. In *Minchin v. Second National Bank, 36 N. J. Eq. 436,* Chancellor Runyon, after referring to the statutory provisions subjecting foreign corporations to the provisions of the act, so far as they could be applied, said: "Obviously there are provisions of the act which cannot be applied to such corporations; for example, this court cannot hinder such corporations from exercising their franchises, except as it may enjoin them from exercising them in this state. It can sequester their property here and administer it for the benefit of creditors and stockholders, but it can do but little more. \* \* \* In the language of the New York supreme court, in *De Bemer v. Drew, 57 Barb. 438,* this court cannot regulate the internal affairs of foreign corporations, nor enforce any remedy beyond the limits of this state; it cannot annul or forfeit their charters, but it can and ought to provide for the collection of debts against them, when they or their property are brought within the jurisdiction of the courts of this state. The foreign corporation doing business here is subject to the provisions of our statute, so far as its property in this state is concerned. The proceeding is, practically, merely a proceeding *in rem,* and as such must be subject to prior liens, created by prior proceedings in attachment, and the vigilant creditor who obtains such prior lien at law ought not to be, and cannot be, deprived of his advantage." In that case the chancellor did not doubt the power of the court to appoint a receiver of an insolvent foreign corporation under the statute.

In *Low, Receiver,* v. *R. P. K. Pressed Metal Co., 91 Conn. 91; 99 Atl. Rep. 1; L. R. A. (1917 D) 291,* in an original proceeding a receiver had been appointed of a New York corporation. Subsequently, a receiver was appointed in the state of the domicile of the company. Application was then made for the appointment of an ancillary receiver. It was insisted that the court was without jurisdiction in the original proceeding to

appoint a receiver. The court held that the original appointment was proper. The court said: "When it appoints a receiver the officer becomes its officer, and is completely amenable to its control, and it matters not whether he is called an ancillary or merely a receiver. His title to the assets within the jurisdiction is derived from its decree, and does not depend upon comity. The assets are in its custody, and are to be disposed of as equity and the orderly administration of justice requires. Its judgments and decrees in respect to these assets must be accepted as conclusive by all other courts. Where a receiver, administrator, or other custodian of an estate, is appointed by the courts of one state, the courts of that state reserve to themselves full and exclusive jurisdiction over the assets of the estate within the limits of the state. *Reynolds* v. *Stockton, 140 U. S. 254; 35 L. Ed. 464; 11 Sup. Ct. Rep. 773."* An illuminating note upon the power to appoint receivers for foreign corporations where no domiciliary receiver has been appointed, follows in *L. R. A. (1917 D) 295.* And see *p. 303,* where the right to appoint under statutes similar to that of this state is considered. Also see *Beale For. Corp.* § *791.*

It is an established practice now for federal district courts to appoint receivers of corporations foreign to the district and the state in which the district is situated at the suit of a non-resident creditor, where the corporation can be served and does not object to the jurisdiction or where it consents. In such suits, all of the assets of the corporation are liquidated and the proceeds distributed. If necessary, suits ancillary to the first are brought in other districts. The receivers are permitted to assert any right of the corporation or its creditors. The authority of a state court to appoint a receiver for a foreign corporation which has entered into business in the state under a statute providing such corporations shall be deemed and taken to be corporations of the state was not questioned in the case of *Blake* v. *McClung, 172 U. S. 239; 43 L. Ed. 432.*

The law seems to be well settled that a court of equity has jurisdiction under its inherent power, and where statutes exist similar to that in this state, then under such statutes, to appoint

a receiver of a foreign corporation upon the ground of insolvency
or upon any other ground which would warrant the appointment
of a receiver, to conserve and gather in the assets, either legal
or equitable, within the state and to enforce the rights of the
corporation, either legal or equitable, which may be enforced
against those over whom jurisdiction can be obtained, within the
case of *Pennoyer* v. *Neff, 95 U. S. 714; 24 L. Ed. 565.* The
jurisdiction of the court does not depend upon whether or not
a receiver has been appointed in the state of the domicile of the
corporation nor upon whether it has been there adjudicated in-
solvent. The question is one not of jurisdiction but of dis-
cretion in the exercise of jurisdiction. It is insisted, however,
that this is not now, if it ever was, the law in this state since
the opinion of the court of errors and appeals in *McDermott* v.
*Woodhouse, supra.* In that case a bill had been brought by a
receiver of a New York corporation appointed by this court to
hold stockholders for liability for stock issued for property pur-
chased, as was said, at a gross overvaluation. The suit was
brought to enforce liability arising under the provisions of the
New York statute. *McDermott* v. *Woodhouse, 99 Atl. Rep. 103.*
The court of errors and appeals held that such a suit could not
be brought either at law, or in equity, until the amount of the
assessment had been determined, and that the only forum in
which such a determination could be had was that of the domicile
of the corporation. This is as far (for the purposes of the pres-
ent case) that the case can be said to have any binding authority.
In the opinion the court used this language: "There is nothing
to show that a receiver has ever been appointed in New York,
the domicile of the corporation. Nothing is averred in the bill
which would justify our courts in appointing a receiver in in-
solvency of a New York corporation. The draftsman seems to
have conceived the notion that under our statute a receiver in
insolvency can be appointed for a foreign corporation by the
same procedure that is authorized in the case of a New Jersey
corporation. We mention these difficulties because they are of
so fundamental a character that we ought not to pass them un-
noticed, and thereby appear to justify what seems by the aver-

ments of the bill to have been an unwarranted interference by our courts in the internal affairs of a foreign corporation. Probably the proceedings for a receiver were *ex parte,* and the attention of the court was never called to the fact that the corporation was not a New Jersey corporation. The matter is important. The bill seeks to do what can only be done by a receiver in case he possesses all the powers of a statutory receiver in insolvency, and shows on its face that the utmost powers he could have would be those of a mere ancillary receiver to gather in the assets in this state." It will be at once observed that the language used indicates merely an expression of the refusal of the court to approve the practice pursued in the appointment of a receiver of a foreign corporation. If it had been intended to definitely overthrow the doctrine of the case of *Albert* v. *Clarendon, &c., supra,* that case, and others which I have referred to, would undoubtedly have been mentioned, nor do I think that the use of the word "ancillary" implied that the court deemed that it was a necessary prerequisite to the appointment of a receiver in this jurisdiction, that a receiver should have been appointed in the jurisdiction of the domicile of the corporation. Rather the term "ancillary" is employed in the sense used by Vice-Chancellor Reed in *Irwin* v. *Granite State Provident Association, supra.* To hold that a necessary prerequisite to the appointment of a receiver is the appointment of a receiver in the state of the domicile would, in a great many instances, where all of the business of the corporation is conducted in this state, all of its property is in this state, all of its creditors, or a majority of them in this state, deprive residents of this state of any remedy or force them to proceed to a foreign jurisdiction which would have control of nothing but the corporate entity. *Summit Silk Co.* v. *Kinston Spinning Co., 154 N. C. 421; 70 S. E. Rep. 820; Ann. Cas. (1912 A) 897.* In that case the court reiterating its remarks in *Holshouser* v. *Copper Co., 138 N. C. 248; 50 S. E. Rep. 650; 70 L. R. A. 183,* on appeal of the State of New Jersey, held that the courts of North Carolina had jurisdiction to appoint a receiver of a New Jersey corporation on the ground of insolvency under a statute giving the court power to appoint receivers of corporations generally.

In *12 Ruling Case Law* § *85,* the rule is stated:

"It is well settled that the courts of one state may, at the instance of resident or domestic creditors, or even at the instance of a non-resident creditor, appoint a receiver for a foreign corporation doing business therein and having property there, notwithstanding the appointment of a receiver at the domicile of the corporation where the general requisites for a receivership are shown, as in other cases."

Citing cases from many jurisdictions including the supreme court of the United States. The case of *Albert* v. *Clarendon, &c.,* cited with approval.

I conclude, therefore, that the appointment of the receiver was properly made.

*Third.* The last contention made by the defendant is that the relief sought by the receiver is such an interference with the internal affairs of the corporation as that relief cannot be obtained within this state. And again reliance is placed upon *McDermott* v. *Woodhouse, supra.* I do not think that the principle of that case applies to this. The property alleged to have been fraudulently transferred is within this state. The alleged fraud doer is here in bankruptcy. The defendant Baskerville has appeared. The Elizabeth Heights Realty Company is a New Jersey corporation. It is fair to assume that the wife of Shearer is a resident of this state. The New Jersey Co-operative Realty Company is made a party defendant and may be served here. The bill is one which might have been brought by the corporation, or a stockholder in its right if the directors refused to proceed and if a receivership had not intervened, to set aside a conveyance alleged to have been fraudulently made by its directors for their own use and benefit, without consideration. If such suit were brought by the corporation, or by anyone in its behalf, it would necessarily have to be brought in a state where jurisdiction could be acquired over the persons of the defendants or over the property. Relief could not be obtained in the jurisdiction of the domicile of the corporation unless the parties defendant voluntarily appeared. The New York courts have no control over the property, nor over the foreclosure proceedings pending in this court. No relief could be granted which would maintain

the status until final hearing unless personal service could be made upon the defendants.

. A case directly in point is that of the *National Trust Company* v. *Miller, supra*. There had been a receiver appointed in the jurisdiction of the domicile of the corporation. Subsequently, upon a petition by certain of its creditors representing that all of its property was located in this state, that it had suspended its business and become insolvent and that a receiver had been duly appointed in New York for the purpose of winding up and making equal distribution, a receiver of the corporation was appointed in this state. A foreclosure suit had been started against the company before the receiver was appointed. The receiver was let in as party defendant and attacked the validity of the mortgage. The nature of the defence is illustrated by the following excerpts from the opinion of Vice-Chancellor Van Fleet: "The validity of this mortgage is indefensible except on the theory that it was within the scope of the powers of the paper company to devote the half or the whole of its property to the railroad company, regardless of the rights of its creditors or the public. It is clear it possessed no such power, and if it had attempted to do so, by open and direct means, its act would have been so conspicuously *ultra vires* as to strip it of the least appearance of validity. * * * There is another important principle which I think it is my duty to enforce in deciding this case. Equity regards the property of a corporation as a fund held in trust for the payment of its debts, and if others than *bona fide* creditors of the corporation, or purchasers, possess themselves of it, they take it charged with this trust, which a court of equity will enforce against them." The result was that the mortgage was set aside. If what was attempted to be accomplished in *National Trust Company* v. *Miller* did not involve an interference with the internal affairs of the corporation, then it would seem that what is attempted to be accomplished in the case *sub judice* certainly does not. The vice-chancellor held that the defence could be set up by the receiver appointed by this court and said: "There can be no doubt, under the rule established by this adjudication (referring

to *Miller* v. *Mackenzie, 29 N. J. Eq. 291*), that it would be competent for the receiver in this case, in his official character, to bring a suit in equity to nullify the mortgage in question. He holds the title to the mortgaged premises; he alone has a right to their possession, and he alone can sell and convey them. Adopting an argument very forcibly put in the case just cited, we may say it cannot be pretended, if the mortgagees were in possession, that this receiver could not maintain an action of ejectment against them, and if he established the fact that the mortgage was a fraud upon creditors, that he would not be entitled to recover. Why, if this be so, is he to be confined to such action, and to be excluded from taking his case before a tribunal that is competent not only to adjudge with regard to his right to the property, but also to remove from it a fraudulent and pretended claim, which, so long as it exists, renders it unsalable in his hands? His right of action and his right of defence are, in this instance, in my apprehension, reciprocal, and if he has produced sufficient evidence of the invalidity of the mortgage to entitle him, if he were complainant, to a decree so adjudging, he is, upon the same evidence entitled to a decree of dismissal. * * * In my judgment, the receiver stands before the court invested with the rights and equities of the creditors of the paper company, and has therefore a right to ask judgment against this mortgage, if he has shown that it was executed in fraud of their rights."

If I am right that a receiver of a foreign corporation can be appointed under the statute without a receiver having first been appointed in the jurisdiction of the domicile of the corporation, I think the fact that such a receiver has been appointed is immaterial with respect to the powers of the receiver appointed here. The case of *National Trust Co.* v. *Miller* is cited with approval in *Beale For. Corp.* § *791,* and in many cases in this jurisdiction.

In *Summit Silk Co.* v. *Kinston Spinning Co., 154 N. C. 421,* the court said: "The property of the spinning company is in this state, and the laws of New Jersey should not be permitted to effect its status or prejudice the rights of creditors of the cor-

poration in respect of it. They must all come into this jurisdiction in order to have its assets administered for their benefit, and cannot get relief in the courts of New Jersey, because the property is situated here. If we should deny the remedies of our laws to them for the reason assigned by the defendant, the assets in this state would be practically exempt from the claims of creditors."

In *Minchin* v. *Second National Bank, 36 N. J. Eq. 436,* a receiver had been appointed of a foreign corporation, under the statute. There had not been an appointment in the jurisdiction of the domicile of the company. It appeared that certain attachments had been levied upon the property of the corporation pending the hearing on the order to show cause. The party applying for the appointment of the receiver attacked the attachments. It was held by the chancellor that the proper party to make the attack was the receiver.

Without attempting to enumerate all of the powers possessed by a receiver of a foreign corporation, it seems to me to be clear that he has the power to institute such actions as may be necessary to recover, for the creditors and stockholders, assets, legal or equitable, within this state, and to enforce such obligations of persons over whom jurisdiction can be obtained in this state which the corporation or its creditors might have enforced. I do not think that the suit will affect the internal management of the affairs of the corporation within the sense used by the court of errors and appeals in *McDermott* v. *Woodhouse, supra,* or in *Jackson* v. *Hopper, 76 N. J. Eq. 604.*

It is extremely difficult, and, I think, almost impossible, to formulate a test as to what constitutes an interference with the internal affairs of the corporation which can be applied in every case. The court of errors and appeals in *Jackson* v. *Hopper, supra,* while approving the definition contained in the case of *North State Mining Co.* v. *Field, 64 Md. 151,* confined it to the class of cases of which that then before the court was one.

The subject is treated in *12 Ruling Case Law (tit. "Foreign Corporations")* §§ *20, 21, 22.* It is there stated that the test

"Where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as corporator, stockholder, director, president or other officer, and is the act of the corporation, whether acting in stockholders' meeting or through its agents, the board of directors, then such action is the management of the internal affairs of the corporation, and in the case of a foreign corporation courts of another state will not take jurisdiction even though the visible tangible property of the foreign corporation is situate therein.   Where, however, the act of the foreign corporation complained of affects the complainant's individual rights only, then a domestic court will take jurisdiction,"

has been adopted by courts of several jurisdictions, yet it appears that it has not been by any means uniformly approved. It has been held that there are cases where, although the rights of a party grow out of his membership in the corporation, yet, as the matter affects only his individual rights under the contract by which the stock was issued, therefore an enforcement of those rights will not be an interference with the internal management of the corporate affairs within the meaning of the rule. The author says that the difference between the two tests is as follows:

"Those courts which apply the first mentioned test, in determining whether they will take jurisdiction of an action against a foreign corporation, inquire whether the right sought to be enforced accrues to the plaintiff as an individual, independent of his relationship to the corporation, while with those which have adopted the latter, the question is, does the right, though growing out of his status as a stockholder, belong to the plaintiff individually and not as one of a class.   Irrespective of the question as to the proper test to be applied in determining what are the internal affairs of a corporation, the view has been expressed by some courts that in the case of corporations which are non-resident only in that they were created in another state—the officers, agents, stockholders, business, and property all being within the jurisdiction of the court—they will not deny relief in a proper case on the ground that the 'internal affairs' of the corporation will be affected."

It has been held (*Babcock* v. *Farwell, 245 Ill. 14; 91 N. E. Rep. 683; 137 A. S. R. 284; 19 Ann. Cas. 74,* and note, a well-reasoned case) that where minority stockholders in a foreign corporation seek by suit in equity to have restored to the corporation property fraudulently appropriated to their own use

by directors, who, together with the corporation itself, are personally subject to the jurisdiction of the court, the court should exercise its jurisdiction for the determination of the controversy. And in *Kidd* v. *New Hampshire Traction Co., 72 N. H. 273; 56 Atl. Rep. 465; 66 L. R. A. 574,* it was held that a fraudulent transfer of the personalty of a foreign corporation situate within the state would be set aside, and this notwithstanding that the corporation could not be served with process. These latter cases are direct authorities in the case at bar.

If it had not been for the strenuous insistence on the part of the defendant that the opinion of the court of errors and appeals in *McDermott* v. *Woodhouse* required a determination directly contrary to which I have arrived, I would have contented myself in disposing of this case with a mere reference to *Albert* v. *Clarendon, &c., Co., National Trust Co.* v. *Miller, Minchin* v. *Second National Bank, Irwin* v. *Granite State Provident Association.*

Whether the objections sought to be raised by the defendant as to the validity of the order appointing the receiver and the jurisdiction of the court to appoint a receiver can be raised by him in this suit I have not considered and express no opinion thereon.

The result is that the order to show cause will be made absolute and the injunction will be continued to final hearing upon condition that the defendants secure, or cause to be secured, the payment of the amount due upon the decree of the defendant Baskerville; other equitable provisions may also be made in favor of other defendants if they appear. Before the signing of any order, an order amending the order appointing receiver should be taken as indicated in the forepart of this opinion.

Settle order on two days' notice.