CHICAGO TITLE AND TRUST COMPANY and FRANK G. LOGAN

*v.*

EXECUTORS OF EDWARD F. C. YOUNG and UNITED TELEGRAPH, TELEPHONE AND ELECTRIC COMPANY.

[Decided January 9th, 1919.]

1. An action to levy an assessment on behalf of creditors upon the holders of stock of an Illinois corporation must be brought in Illinois and this court has no jurisdiction where the corporation has no assets, no agent and apparently no creditors in New Jersey.

2. After a suit for an accounting of the assets and liabilities of an Illinois corporation has been conducted to a finish in the State of Illinois and an assessment of stockholders ordered, to which proceeding all stockholders wherever resident are privies, and by which they are bound, then action can be maintained in a court of competent jurisdiction in New Jersey, against the executors of a former stockholder, to enforce such assessment.

---

On final hearing on bill, answer and proofs taken partly on commission in Illinois and partly in open court.

*Mr. Henry W. Runyon, Mr. Walter L. McDermott* and *Mr. Warren B. Wilson* (of the Illinois bar), for the complainants.

*Mr. Edwin F. Smith, Messrs. Forman, Levine & Robinson* and *Mr. David Blumrosen* (of the Illinois bar) and *Mr. John W. Griggs,* for the defendants.

STEVENSON, V. C.

The bill alleges that the complainants are creditors of the defendant the United Telegraph, Telephone and Electric Company, hereinafter referred to as the United Company. The complainant the Chicago Title and Trust Company, hereinafter referred to as the Title Company, as trustee hold a mortgage of the United Company to secure an issue of bonds of the last-named company, amounting to a million dollars. The complainant Logan holds forty of these bonds.

In the year 1904 the Title Company filed a bill to foreclose its mortgage in the superior court of Cook county, in the State of Illinois, where both mortgagor and mortgagee were domiciled, and the result was a decree for the sale of the mortgaged assets which was entered on January 29th, 1913. On April 30th, 1913, in the same cause, in accordance with the Illinois practice, a decree for deficiency was entered, the amount of the deficiency being $66,148.26. The Illinois court was enabled to grant this money decree in the foreclosure suit in favor of the mortgagee, who was a mere trustee, by virtue of an express covenant in the mortgage by which the United Company, the mortgagor, covenanted with the Title Company, the mortgagee, that it, the United Company, would "duly pay or cause to be paid the said bonds * * * according to the tenor and effect" thereof. Upon this decree for deficiency an execution was forthwith issued from the Illinois court and was returned wholly unsatisfied.

The standing of the complainant Logan as a creditor of the United Company and co-complainant in this cause, is altogether different from that of the Title Company. The complainant Logan stands upon rights which he holds on his own behalf as a legal creditor of the United Company under the bonds of the

company which he owns and which are still to a very large extent unpaid.

I am not certain that I understand the relation of the decree of the Title Company to the apparently independently asserted claim of Mr. Logan on his bonds. There seems to be at least a suggestion that when the Title Company under the Illinois law and practice took its deficiency decree embracing the entire unpaid amount due on the bonds which the mortgage was given to secure, a merger of some sort was thereby effected, or, in other words, that the claim of the complainant Logan became a part of the decree of his trustee, the Title Company. This matter, however, was not referred to in the argument or briefs and need not be considered.

The bill of complaint is filed, I think, after the model prescribed by the court of errors and appeals in the case of *Wetherbee* v. *Baker, 35 N. J. Eq. 501.* It charges that the United Company in the year 1894 or 1895 made a fraudulent over-issue of stock for property purchased, which property in fact was not worth a fractional part of the amount of stock so issued. The bill also charges that in the year 1902 the late Edward F. C. Young, the defendant's testator, acquired the whole of this issue of stock ($1,000,000 par value) with perhaps the exception of a few qualifying shares with full notice of the over-valuation and accompanying fraud.

If we assume for present purposes that there was in fact a gross over-valuation of the property for which this million dollars in stock was issued, there are strong indications in the evidence that Mr. Young acquired the company in good faith expecting to take care of its obligations, and that in fact he was deceived by fraudulent representations into paying for the property which he acquired ten or twenty times its value. After financing for a few years this United Company, which was a telephone and telegraph company, undertaking to operate in one of the suburbs of the city of Chicago, Mr. Young apparently gave up the project as hopeless, transferred his stock, as his executors allege, to some person unknown, and about five years after his death all the assets which he had acquired through his

ownership of the stock were sold in the foreclosure suit above mentioned for $3,500.

The defendant the United Company, this Illinois corporation, although made a defendant in the bill has not been brought within the jurisdiction of the court by service of process, nor does it appear that legal ·or other notice of the suit has been given to this company, or that the company has in any way been invited voluntarily to appear and defend. In the absence of a voluntary appearance I understand that counsel agree that no decree in the cause would be binding upon the United Company, and that therefore no decree can properly be entered against it. The United Company has no ·assets in New Jersey and so far as appears never came into the state to do business even in a single instance. The complainant the Title Company, likewise is an Illinois corporation doing business in Illinois, and, leaving this present suit out of view, has done no business and has no assets in the State of New Jersey.

The other complainant, Mr. Logan, is described in the bill as being a resident of the city of Chicago. In his case also it appears to be true that, leaving out of view this present suit, he has never had any assets or done any business in the State of New Jersey.

The bill is filed on behalf of all the creditors of the United Company,· and it undertakes to accomplish the objects appropriate to such an equitable action in New Jersey according to the views and doctrines set forth in the opinion of the court of errors and appeals in *Wetherbee* v. *Baker, supra.* The bill prays that an accounting be taken under the direction of· the · court of chancery of New Jersey of the amounts due to the complainants, and of any amounts due to any other creditors of the United Company, and that an accounting also be taken of the amounts remaining unpaid of the subscriptions to the capital stock of the United Company, and of the amount of property or assets received by any of the defendants from the estate of Mr. Young and undistributed, and that the defendant executors be decreed to pay to the complainants the amounts of their said claims, and to such other creditors, on behalf of

whom this suit is prosecuted, as may establish their claims, the amounts due them respectively. The bill assumes that not only will the court of chancery of New Jersey make an assessment upon the stock alleged to be held by the Young estate, but will in the same suit make a decree for the payment of such assessment, either directly to the complainants and any other creditors who may establish their claims or to a receiver hereafter to be appointed.

A large number of defences have been interposed, among which are these:

That all the subscriptions were made in good faith;

That all the capital stock issued was fully paid for in money or in property;

That there is no proof of any over-valuation;

That if there was a fraudulent over-valuation Mr. Young had no notice of it;

That the certificates purchased by Mr. Young were stamped "Full paid and non-assessable," and that he had no notice that this statement was not true;

That Mr. Young was a purchaser in good faith and without notice and that under the laws of Illinois he was free from any claim from liability, &c., by reason of any over-valuation;

That under the laws of Illinois and the decisions of the supreme court of that state, Mr. Young as transferee and assignee of the stock received the same free from any liability to the United Company for any alleged unpaid subscriptions thereon, for the reason that under said laws the acceptance by the United Company of the said property in consideration of the issue of its said stock was, as between the said corporation and the subscribers to whom said stock was issued and all subsequent transferees thereof, a valid and binding contract;

That the suit is brought to enforce a statutory liability under section 25 of chapter 32 of Hurd's Revised Statutes of the State of Illinois, and that the Illinois statute of limitations (section 15 of chapter 83 of Hurd's Revised Statutes) as well as the New Jersey statute of limitations is a bar;

That the suit is based upon an alleged liability of the Young estate created by and arising from a statute of a foreign state, that the United Company was a foreign corporation which never has had any place of business or representative or agent, or any assets in New Jersey, and has never transacted any business in New Jersey, and that under the provisions of chapter 50, section 2 of the laws of 1897 (*P. L. 1897, p. 125; 2 Comp. Stat. p. 1656, § 94b*) the court of chancery of New Jersey is without jurisdiction of the cause;

That under the last mentioned New Jersey statute all of the creditors are indispensable parties to the suit, and that the complainants failed to join as defendants a number of creditors;

That the Illinois statute (section 8, chapter 32 of Hurd's Revised Statutes) provides an exclusive remedy for the enforcement against the defendant executors of their liability under the Illinois statutes, and that no suit to enforce that liability can be maintained in New Jersey by reason of the provisions of the New Jersey statute of 1897 above cited;

That the action is barred by laches as well as by the statute of limitations because no suit was brought by complainants or either of them to enforce the payment, &c., until ten years after the alleged right of action accrued and became enforceable;

That all the holders of the bonds for the payment of which the Title Company recovered its decree are estopped from complaining of the manner and method by which the capital stock of the United Company was paid for because the said holders all had actual notice of all the facts;

That the court of chancery of New Jersey is without jurisdiction because no judgment or decree for the alleged cause of action has been recovered or entered in the State of New Jersey;

That the court of chancery of New Jersey is without jurisdiction because it does not appear by the bill that the complainants have exhausted their remedy at law within the State of New Jersey;

That the court of chancery of New Jersey is without jurisdiction because of the non-joinder as parties defendant of all

the parties who at various times held the stock which was afterwards transferred to Mr. Young.

The foregoing enumeration of the principal contentions of the parties in this cause may not be exhaustive, and in some details may not be entirely accurate. The enumeration will serve, however, to indicate the variety and complexity of the propositions which were the subject of protracted oral argument and of voluminous briefs. A large part of the argument was occupied with the construction and application of the above-stated statutes of the State of Illinois, concerning which some important questions were raised and debated.

After the cause had been argued and the court was engaged in the preparation of an opinion, the attention of counsel was called by the court to the case of *McDermott* v. *Woodhouse, 87 N. J. Eq. 615*, which was decided by the court of errors and appeals after the argument and had escaped the attention of this court at the time of its publication. An opportunity was given to partly reargue the case or to submit briefs upon the question whether under the controlling authority of this recent decision of our court of last resort, the court of chancery had any jurisdiction to make an assessment on behalf of the creditors upon the holders of stock in a foreign corporation which was not doing and never had done any business in the State of New Jersey, had no assets, no agent and apparently had no creditors in this state, and did not voluntarily appear in the suit.

After receiving briefs on the above-stated question from each side of this controversy, and duly considering the same, I have reached the conclusion that to hold that the court of chancery of New Jersey has jurisdiction of this action would be in effect to undertake to overrule a unanimous decision of the court of errors and appeals. Accepting the view set forth by Vice-Chancellor Lane in *Atwater* v. *Baskerville, 104 Atl. Rep. 310*, that the statement contained in the opinion of Mr. Justice Swayze for the court of errors and appeals in the *McDermott Case*, to the effect that the New Jersey court of chancery has no jurisdiction to appoint an insolvency receiver, *i. e.*, the *statu-*

*tory* receiver, of a foreign corporation having assets and doing business in the State of New Jersey, was a *dictum* which did not overrule many prior decisions of the court of chancery in which such jurisdiction had been asserted, it still remains that this authoritative decision of our court of last resort established the proposition that an action to make an assessment for the benefit of creditors upon holders of unpaid stock in a foreign corporation, cannot be maintained in New Jersey but must be brought in a court of the domicile of the corporation. The conclusion is stated that "the propriety and amount of an assessment to pay creditors are internal affairs of the corporation with which the courts of another jurisdiction will not intermeddle."

Confining our consideration for a moment strictly to the facts proved in the *McDermott Case,* and the facts proved in the case at bar, it seems clear that if the court of chancery had no jurisdiction to make an assessment in the *McDermott Case, a fortiori,* it has no jurisdiction to make an assessment in this case.

In the *McDermott Case* a foreign corporation created under the laws of New York had come voluntarily into New Jersey, had purchased a tract of land and had embarked in the business of a land company in this state, thereby subjecting itself to the provision of our statute (*Corp. act* § *96*) that "foreign corporations doing business in this state shall be subject to the provisions" of the act, including, of course, the sections providing for winding up insolvent corporations, "so far as the same can be applied to foreign corporations." No doubt it was argued that stockholders of a foreign corporation which comes voluntarily into the State of New Jersey and proceeds to do business and acquire assets (in many cases having all its business and all its assets and perhaps all its creditors in this state), are, "in the view of the law * * * privy to the proceedings touching the body" of which they are members (at. *p. 618*) conducted under the provisions of our Corporation act.

In the case at bar no such argument can be made. The United Company has never done an act which could possibly have the effect to subject its internal affairs, or, indeed, any of its affairs, to the jurisdiction of a New Jersey court. The

complainants, as we have seen, consist of an Illinois corporation and an Illinois individual, who prior to the commencement of this suit have had no relations, arising from the transaction of business or the possession of assets, with the State of New Jersey. Of course these two residents of Illinois can came into the New Jersey court and sue defendants whom they can serve with process in this state.

The complainants seem to have assumed that they are in the same position as if they were asserting in this cause a direct liability for a liquidated amount to them and the other creditors of the Illinois corporation from the defendant executors. They are doing nothing of the kind. Only after an accounting has been had of all the assets and liabilities of this Illinois corporation, in a suit in which the court has jurisdiction of the corporation, can it be ascertained whether the defendant executors are liable at all, or if they are liable, what the extent of such liability is. The very gist of this equitable action in New Jersey is to ascertain whether an assessment should be made upon the stock held or formerly held by the defendant's testator, and if an assessment is to be made, then for what amount. After the suit for an accounting of the assets and liabilities has been conducted to a finish in the State of Illinois, and the assessment of the stockholders has been therein ordered, to which proceedings all the stockholders wherever resident are privy, and by which they are bound, then for the first time an action can be maintained in a court of competent jurisdiction in New Jersey to enforce the assessment against the executors of the former stockholder, Mr. Young.

It would seem from the opinion of the court of errors and appeals in *McDermott* v. *Woodhouse, supra* (at *p. 620*), that such action would be a strictly legal action of which the court of chancery would have no jurisdiction. *Barkalow* v. *Totten, 53 N. J. Eq. 573.*

In the case of *Manning* v. *Hercules Motor Company* decided by me many years ago but not reported, I reached the conclusion in effect that in these cases of over-valuation of property purchased by stock, in which, however, there was absolutely no

legal contract and no liability at any time enforceable by the cor-
poration, the liability of the stockholders to creditors was equi-
table, and that an insolvency receiver could file a bill setting
forth the facts out of which the defendant stockholders' liability
arose, have an ascertainment of the amount which the defend-
ants respectively must contribute, and get a decree against the
stockholders fixing the amount to be paid to the receiver by
each stockholder, and that the proceedings would be conducted
in such manner as to recognize and adjust as far as possible
the equities of the stockholders *inter sese* in a way impossible
in separate actions at law. My view was that such a suit in
equity is not based on any contractual obligation of the stock-
holders but upon an equity of the creditors, involving the theory
of a trust fund and of fraud, matters clearly of equitable cogniz-
ance. Whether this view can now be held in New Jersey or
whether it has become untenable is a matter which I have not
undertaken to examine and about which I shall express no
opinion in this case. There may be a distinction between New
Jersey corporations like the Hercules Motor Company and for-
eign corporations like the Lakewood City Development Com-
pany whose stockholders were sued in *McDermott* v. *Woodhouse*.
In the case of New Jersey corporations the creditors, usually
through a receiver, are obliged to invoke the jurisdiction of the
court of chancery in order to obtain an enforceable assessment
against the stockholders. In the case of foreign corporations,
as is decided in *McDermott* v. *Woodhouse,* the assessment can
only be made in the domiciliary court: There is an inevitable
hiatus in the proceedings between the assessment and its sub-
sequent enforcement.

So far as appears in this case if the court of chancery of
New Jersey had jurisdiction to conduct an accounting of the
assets and liabilities of this Illinois corporation, and to estab-
lish the amount of an assessment binding upon the stockhold-
ers wherever resident, this, according to the view expressed in
*McDermott* v. *Woodhouse,* would be the limit of the decree.
The complainants, presumably through a receiver to be ap-
pointed in the cause, would be obliged to bring an action at

law against the defendant executors in which action they (the defendants) would of course have the benefit of all their legal defences.

If a suit for an assessment in this case wherever conducted can result only in establishing a basis for an action at law, there seem to be no reasons of convenience for having such suit conducted in New Jersey. The propriety of having such suit conducted in Illinois where the United Company is domiciled, had all its assets, conducted all its business and where all its creditors apparently reside, is so obvious that any discussion of the subject is unnecessary.

Having concluded that the court of chancery of New Jersey has no jurisdiction under the principle established by the case of *McDermott* v. *Woodhouse* to determine any of the questions which were originally argued in this case, I have concluded that any expression of opinion in regard to those questions is not only unnecessary but would be improper.

In accordance with the foregoing views a decree dismissing the bill of complaint will be advised.