GENERAL INVESTMENT COMPANY and CONTINENTAL SECURITIES COMPANY

*v.*

BETHLEHEM STEEL CORPORATION et al.

[Decided September 28th, 1917.]

1. Where a corporation is engaged on work for the government and is in urgent need of money, an injunction will not be issued, on application of a professional privateer who purchased a small amount of stock with notice of the plan to issue new stock, but will be denied without passing on the many and difficult questions raised as to the corporation's right to issue the stock.

2. By unanimous consent of the stockholders, a corporation may issue stock to be placed ahead of existing preferred stock.

3. If the act done is *ultra vires*, but acquiesced in by all interests of the corporation, the sole person who may attack it is the attorney-general on behalf of the state.

4. Where application is made by a professional agitator, who bought in for the purpose of fomenting litigation, for preliminary injunctive relief against proposed corporate action, the court may weigh conveniences.

5. Although it is a general rule on application for preliminary injunction that to doubt is to deny, this rule does not apply with its full force where to deny relief would permit the destruction of the subject-matter of the litigation. In such cases it may generally be said that to doubt is to grant.

On bill, &c.

*Messrs. McCarter & English* (*Mr. Robert H. McCarter* and *Mr. Arthur F. Egner*), for the complainants.

*Messrs. Lindabury, Depue & Faulks* (*Mr. Richard V. Lindabury*); *Messrs. Pitney, Hardin & Skinner* (*Mr. John R. Hardin*), and *Mr. Paul D. Cravath* (of the New York bar), for the defendants.

LANE, V. C. (orally).

This is an application for a preliminary injunction restraining the Bethlehem Steel Corporation from increasing its capital by the issuance of thirty million of stock termed "Eight Per Cent. Cumulative Convertible Preferred." A meeting is to be held to-morrow at eleven o'clock. The court of errors and appeals, I understand, is in session and application for any *ad interim* relief on appeal may be made to that court to-morrow morning. That is the reason why I have changed my mind and have concluded to decide the case at this time.

The application is made by General Investment Company and Continental Securities Company, other names for one Venner. They are holders respectively of one hundred shares of the present common and one hundred shares of preferred stock, and the application is made on behalf of both interests. Venner (and I shall use his name in place of the names of his corporations) bought his common stock in January of this year, as I find, for the sole purpose of harassing in any way that he could the stockholders and directors of this corporation. At the time the specific purpose that he had in mind was to prevent a scheme of financing which was then under discussion. He bought his preferred stock after notice of the present plan and for the specific purpose of preventing its success. He is entitled from a court of equity to only such consideration as that court is absolutely bound under the rules of law to accord him. The company at the present time has a preferred stock issue of $15,000,000, and a common stock issue of $60,000,000. The common stock is divided into two classes, fifteen million termed

"Common" and forty-five million termed "Common Class B." The voting power is possessed only by the preferred fifteen million and the common fifteen million. It is now proposed to issue a new stock to the amount of $30,000,000 at a dividend rate of eight per cent., which will be preferred, as to dividends, to the present preferred and common and will share in distribution with the present preferred *pari passu*. This stock is to be redeemable at the option of the corporation after three years at one hundred and fifteen. It is to be convertible into common class B at the option of the holder at any time.

The objections raised I will consider, I think, in the order of their importance. It is insisted by the complainant that the proposed scheme violates his contract rights evidenced by the certificate of incorporation, or the amended certificate of incorporation. That certificate provides in terms that the present preferred stock shall be preferred as to dividends over all *other stocks* of the corporation. It further provides that the common stock shall be entitled to all the surplus earnings as dividends after payment of dividends upon the present preferred. It is argued that the effect of this certificate is practically an agreement on the part of the corporation and its stockholders that at all times present preferred shall be entitled to these dividends in preference to dividends on any other stocks, and that the common is entitled to all surplus earnings. That in effect it is an agreement that no other stock will be created which will change the rights of the preferred and common as stated in the certificate. The case of *Pronick* v. *Spirits Distributing Co., 58 N. J. Eq. 97,* opinion by Vice-Chancellor Emery, is cited as authority. He held that, notwithstanding the broad power of amendment which was at that time included in the statute, the rate of dividends fixed by the certificate of incorporation could not, without the assent of all the stockholders, be reduced. The hearing before the vice-chancellor was on an application for a preliminary injunction. The case never went to the court of errors and appeals: The vice-chancellor also held that the stockholder had no adequate remedy at law. By the express terms of the statute, all its terms are read into every certificate of incorporation, and it is insisted for defendant that under the

provisions of section 27 the corporation may, by amendment, create one or more classes of preferred stock, with the consent of two-thirds of the existing stock. When the stockholder bought into the concern he bought into it, of course, charged with the knowledge not only of what was in the certificate of incorporation but what was in the statute, and it is insisted that one of the risks that he took was that, if two-thirds of his associates deemed it wise to issue a preferred stock, the effect of which would be to alter the rights of the then existing stockholders, he must acquiesce therein. There is no decision that has been brought to my attention which is directly in point. The determination of the question is of the utmost importance not only in the present case, but because a precedent will be created one way or the other.

The next objection is that there is found nowhere in the statute a right to create a preferred stock convertible into common. There is no express provision in the statute which warrants this. There is an express provision permitting a conversion of preferred into bonds, and it is argued that the fact that the legislature has provided specifically for such conversion is an indication of the legislative intent not to permit the issuance of preferred which may be converted into any other class of security than that specifically provided by the statute. On the other hand, the company unquestionably may issue preferred stock and may retire that preferred stock by buying it with the acquiescence of its holders and may issue common which may be purchased with the proceeds of preferred. It may, I have no doubt, issue a preferred stock with preferences for a limited length of time, say ten years, and thereafter only to have the rights of common. What is now sought to be done is to issue a preferred with limited preferences, the time when the preferences will cease being at the option of the holder of the stock. I had some doubt as to whether, if this plan were carried out, it might not, in some cases, result in the issuance of a common stock for less than par, for, at the time the common stock might be issued, the preferred might be worth less than par. The answer is that the common and preferred, although divided into two classes, are really issued as one; it is really the issuance of

one stock, and at the time the stock is issued, the corporation gets its par.

The next objection is that there is no legal warrant for the redemption of preferred stock at more than par. This argument is based on the provisions of section 29 which provides for retirement. The section specifically provides for retirement and *only retirement* and limits the company to payment of par. In section 18, the legislature has provided that preferred stock may be made redeemable at *not less* than par. It is argued that the two sections must be read together. It seems to me that the legislature clearly had in mind two things, and although it may be that the effect of redeeming stock is to retire it, and is really a purchase for retirement, still it would seem that had the legislature intended that the stock might not be made redeemable for more than par, it would not have in express terms provided that it might be made redeemable at *not less* than par.

It is next objected that the present preferred stock is not given the right to subscribe to the new preferred. Generally speaking, I think the law is well settled that unless there is something in the certificate of incorporation to the contrary the rights of preferred and common stockholders are equal. Whether a particular right is enjoyed equally by both, however, must depend upon the reason for the existence of the right; at least, a very strong argument may be made to that effect. It will be observed that the present preferred has no right in the assets except to the extent of par and accrued dividends. The reason for the existence of the pre-emptive right of subscription is that the relative rights of the existing stockholders both in the assets of the company and in its control may not be altered. The relative interest of the present preferred stock in the assets of the company is not affected by the present scheme. The proposed preferred stock has no voting power so that the relative interest in the control is not affected. It is argued with force that to permit the present preferred to subscribe for the proposed preferred would be to permit a change in the relative rights of the present preferred and common and would be illegal. Of course, if the reason for the rule fails, the rule is not to be applied.

16

Now, I am asked upon this preliminary application to determine these very important questions, none of which have ever been determined by the courts of this state so far as I know, by a man who bought into the situation in the manner I have described, who has a long history of similar efforts, a professional privateer. I recognize the rule, of course, that, whatever his motive, the legal rights of the complainant must be protected, that is, such legal rights as cannot be protected in a court of law. I also recognize that notwithstanding the rule that to doubt is to deny, to doubt is to grant, where the subject-matter of the litigation will be destroyed if the relief prayed for is not granted. It seems to me that in a situation of this kind where the utmost that can possibly be urged by complainant is that the questions may be arguable, a court is entitled to weigh conveniences. There is no question but that this company, I think the second largest steel corporation in this country, is desperately, urgently in need of this $30,000,000, at this time, not a year from now. There is no charge of fraud or bad faith. The controlling interests have endeavored to raise funds by every other means and finally have concluded that there is no way by which the money can be obtained other than in the manner proposed, or at least no way which would be fairer to the present stockholders. It is engaged at the present time in work for the government. It needs money for prosecuting this work. If I should prevent the scheme going through, the result might be disastrous to the vast majority of the present stockholders. I am assuming, of course, that when the plan is put before the stockholders at the meeting, the plan will be approved by an overwhelming majority. Of course, if it is not, much that I have said will have to be withdrawn. Assuming that this plan is approved by practically unanimous consent, is the court obliged at the suit of this single stockholder to protect his strictly legal right, to act in such a manner as would cause great harm to every other interest in the concern, and perhaps the general public, merely because the questions presented by him may be arguable; to cause mischief which, if on final hearing, it decides that it erred or if the court of errors and appeals finds it erred, it cannot undo? I think not. I reiterate what I said in the case of

General Investment Company against the Bethlehem Steel Company, reported in *100 Atl. Rep.* (at *p. 349*) (*87 N. J. Eq. 234*), under the fifth point. There is nothing proposed in the present plan which the company and all of its stockholders may not do, or at least may not estop themselves by acquiescence from questioning. There is no doubt but that by unanimous consent the proposed new preferred can be placed ahead of the present preferred. There is no doubt but that the stockholders of the company may estop themselves from questioning the legality of the issuance of preferred redeemable at one hundred and fifteen or preferred convertible into common. Nor is there any doubt but that the stockholders may waive their pre-emptive right of subscription. If any of the acts charged can be said to be *ultra vires* if the stockholders acquiesce, the sole person who may attack is the attorney-general on behalf of the state. I decline to consider Venner as a proper representative of the attorney-general, and I decline to consider him as a proper representative of a class. The doctrine which I referred to in the prior *Bethlehem Steel Case* is approved by the court of errors and appeals in *Simmons* v. *Paterson, 60 N. J. Eq.* (at *p. 393*).

Without deciding, therefore, any of the questions raised, solely upon balancing the conveniences I will discharge the order to show cause.

If when this case gets to the court of errors and appeals on application for a stay, if one is made, that court thinks that this court should have gone further and actually decided the questions raised, it will be for that court to say whether the case should come back here for such determination.

Lest this opinion may be misunderstood, I desire to add that as presently advised I am not at all in doubt as to how I should decide this case upon the merits. Fundamentally important questions of this kind involving the construction of so many sections of the Corporation act ought not to be determined, however, no matter how clear the court may feel, without careful consideration. That consideration cannot in the nature of things be given without time. If I should hold this case for a sufficient length of time to properly consider the merits incalculable harm may be done. If I should decide now without

that consideration that the plan as proposed is perfectly legal and no appeal is taken, a precedent would be created which ought not to be created without careful consideration. If, on the other hand, I should enjoin the consummation of the proposed plan, and the court of errors and appeals should differ with me, the injury would have been done. The utmost extent to which I go is that the questions are arguable. The eminent counsel who argued the case do not waste a full day in arguing non-arguable questions, nor would I listen for a full day to counsel, however eminent, on a non-arguable question. I prefer in this case to place my decision squarely upon the ground that a court of equity may, where application is made to it for preliminary injunctive relief by a professional agitator, weigh conveniences.

While it is true that Vice-Chancellor Emery in the *Pronick Case* held that the stockholder had no adequate remedy at law, I presume upon the ground that there was no exact method of ascertaining his damages, yet he has a remedy at law. If the acts of this corporation are illegal he may sue at law and recover compensation for such damage as may be found. Although compensation may be difficult to estimate, yet it can be done, at least with approximate justice to both parties concerned so that it cannot be argued that I am leaving him with no remedy whatever. If counsel for the complainant desire, I will compel the corporation to give a bond conditioned as the bond was conditioned in the case of the United Shoe Machinery Company. In that case, the court of errors and appeals upon the application to stay a merger required the defendant company to give a bond, I think of $250,000, conditioned to pay such damages as might be assessed by the chancellor. It would seem that counsel in that case and the court conceived that there was some method of arriving at just compensation. It will be no more difficult to assess the damages of the present complainant, than it will be to assess the damages of the complainant in the *Shoe Machinery Case*.