CHARLES A. HITCHCOCK

*v.*

AMERICAN PIPE AND CONSTRUCTION COMPANY.

[Decided November 9th, 1918.]

1. A bill filed in a federal district court alleging that a corporation was in such financial condition as that it could not meet its maturing obligations as they matured and that if creditors were permitted to resort to legal process, the business would be immediately discontinued and the assets of the defendant sacrificed, showed a condition of insolvency within the meaning of section 65 of an act concerning corporations which would justify an adjudication of insolvency and the appointment of a receiver by this court.

2. Proofs showing that the business of a company has been conducted in such a manner as that it has been obliged to resort to a moratorium to protect its assets, that the management of its affairs has been for nine months under the management of a receiver in a foreign court; that its stock declined from ninety in 1912 to five in 1917; that no dividends had been declared since 1914, and that its working capital was almost exhausted, disclosed that the business had been conducted at great loss and greatly prejudicial to the interests of its stockholders so that its business could not be conducted with safety to the public and advantage to the stockholders within the meaning of section 65 of the Corporation act, as amended, *P. L. 1912 p. 535.*

3. To bring a case within the language of section 65, as amended, there need not appear that there has been either fraud or mismanagement.

CASES IN CHANCERY, 1918.        441

*89 N. J. Eq.*    Hitchcock *v.* American Pipe & Construction Co.

4. The effect of a decree of the United States district court being to take from the corporation all of its assets and to remove from the stockholders the power to manage its affairs through its directors without in anywise affecting the corporate liabilities, there was a complete suspension of business.

5. When directors and officers of a corporation appear in a foreign district court and consent to the appointment of a receiver and to the transfer by the corporation to the receiver of its assets, they violate the provision of section 64 of the act concerning corporations.

6. The judicial policy of this state in insolvency proceedings requires that before any act is done which will affect the interest of creditors and stockholders, they should have notice, which policy is opposed by the practice in the federal courts of directing receivers to perform acts affecting interests of creditors and stockholders without notice to them.

7. The policy of this state requires that a corporation incorporated under its law should be managed by a board of directors and officers responsible for the performance of their trust and subject to certain statutory obligations, which policy is opposed by acts which result in the management of the corporate affairs being taken over by a receiver appointed by a court of a foreign jurisdiction over whom our statute and policy cannot extend and over whom the courts of this state have no control.

8. Where it appears that a corporation is insolvent or that its business is being conducted at great loss and greatly prejudicial to the interests of its creditors and stockholders, and that its assets have been for some time in the control of a receiver appointed by a foreign district court, this court will appoint a receiver under the statute.

9. A stockholder intervening in the federal district court for the purpose of questioning the jurisdiction of that court in an action brought by a stockholder against the corporation for the appointment of a receiver, in which action the corporation has appeared and consented to the appointment, does so in the corporate right and is with respect to such right a trustee for the creditors and stockholders and for the corporation.

10. Whether the expense for legal services incurred by the stockholder in such an action should be borne by the corporation or not is one purely of equity and to be determined by what ought to be done in fairness and equity.

11. Success or failure of the suit or defence brought or made by a stockholder is not determinative as to whether the corporation should bear the expense.

12. Where the suit or defence is one which ought to have been brought or made, whether successful or not, it is fair that the corporation should bear the expense.

13. The district court in Pennsylvania had no jurisdiction to appoint a general receiver of the New Jersey corporation upon a bill filed by a stockholder, and the determination of that court and the circuit court of appeals for the third circuit to the contrary is, under the circumstances of this case, not binding upon this court.

14. The elements which enter into the amount of compensation of counsel considered, and compensation fixed for services rendered in the Pennsylvania litigation and also for services rendered as counsel for complainant who secured the appointment of a receiver in this court. ·

On bill.   On appeal from receiver's rejection of claim.

*Messrs. Runyon & Autenreith* (*Mr. Henry W. Runyon*) and *Mr. Horace L. Cheyney* (of the New York bar), for the appellants.

*Messrs. Collins & Corbin* (*Mr. Gilbert Collins*) and *Mr. Francis B. Bracken* (of the Philadelphia bar), *contra.*

LANE, V. C.

The claim of the appellants, members of the bar, is for legal services rendered to complainant, Hitchcock, under the following circumstances:

Defendant, American Pipe and Construction Company, is a corporation of this state.   On September 19th, 1917, a bill in equity was filed in the United States district court for the eastern district of Pennsylvania by two stockholders of the corporation against the corporation.   The bill alleged that the corporation was in financial difficulties and that if creditors should be permitted to resort to legal process the result would be the immediate discontinuance of the business of defendant and the sacrifice of its assets, but that if the assets were properly conserved and administered for its creditors and stockholders under the direction of the court much of its property could be saved. It prayed for the appointment of a receiver, with power to operate and carry on the business, and for an injunction enjoining defendant and all other persons from interfering with, transferring, selling or disposing of any of its property, and for "other relief."   On September 22d an answer was filed by the corporation, admitting the allegations in the bill.   On the same day the district court ordered, adjudged and decreed that Robert Wetherill, the president of the corporation, be appointed receiver of the defendant and of its property.   He was given permission

to operate the business, and all other persons were directed to turn over to him its property, and were enjoined from interfering, transferring, selling or assigning any of its property. On October 22d the appointment was made permanent. So far as appears from the record no notice whatever was given to any person except defendant, which appeared and consented to all of the proceedings. On October 31st, 1917, complainant, Hitchcock, a stockholder of the corporation (holding legal title in trust for another) intervened in the federal court for the purpose of questioning its jurisdiction. After hearing, on or about December 17th, the district court refused to disturb its decree. Appeal was taken to the circuit court of appeals and that court on March 29th, 1918, affirmed the determination of the district court. Application was made to the United States supreme court for a writ of *certiorari,* which writ was granted, and the case is now in the supreme court undetermined.

The grounds upon which the jurisdiction of the district court was attacked were that that court had no power (at least in the absence of statute) at the instance of a stockholder, to appoint a general receiver of a corporation foreign to the district in which the court was sitting for the reason that such action would be an unwarranted interference with its internal affairs and that the court was without power to appoint a receiver of a corporation where no other specific relief was prayed for.

Complainant, on October 19th, filed a bill in the United States district court for the district of New Jersey, praying for an adjudication of insolvency and the appointment of a receiver under the provisions of section 65, &c., of an act concerning corporations, revision of 1896 (*2 Comp. Stat. p. 1640*); an order to show cause was allowed but no final determination reached by the court. In June, 1918, complainant filed a bill in this court praying for an adjudication of insolvency and the appointment of a receiver under the statute; an order to show cause was allowed; the matter came on for hearing before me, and on July 2d I handed down my conclusions, which resulted in the appointment of a receiver. An order was made under the provisions of section 75 of the statute directing creditors to bring in

their claims. Representation was then made that defendant's business was in such shape as that the federal court of Pennsylvania might properly discharge its receiver and that counsel intended to make application to this court for a discharge of the receiver here appointed under the provisions of section 69 of the act. Proceedings were taken in the federal court which resulted in that court authorizing the discharge of the receiver, whereupon proceedings were taken in this court under the provisions of section 69, which resulted in an adjudication that the debts of the corporation had been paid or provided for and that there remained sufficient capital to enable it to resume its business, and the receiver was directed to transfer to the corporation any rights which he might have in or over its property. This adjudication was made after an independent examination of the situation by this court uninfluenced by the determination of the federal district court. Before the order was made under the provisions of the sixty-ninth section, the present claimants presented their claim to the receiver for services rendered to complainant in the federal district court, both of Pennsylvania and New Jersey, which claim, at my suggestion, in order to save time, was disallowed by the receiver, and an appeal immediately taken by claimants. To secure payment of whatever amount might be allowed by the court upon a consideration of the appeal and also to secure the payment of such counsel fees as this court might allow counsel for complainant for services rendered in this court, the corporation deposited collateral with the receiver as trustee.

The insistence of claimants is that throughout the proceedings in Pennsylvania complainant acted in the right of the corporation, that legal services which were rendered to him were in effect rendered to the corporation and that either counsel have a direct claim upon the corporation for compensation for such legal services or complainant, Hitchcock, has a claim which would include disbursements made and incurred by him for the legal services. Whichever way it is put the question to be determined is whether the corporation is liable for the value of legal services rendered in the Pennsylvania litigation to complainant, Hitchcock. If there is any question of procedure or as to by whom

the claim should be presented, orders may be taken so that the meritorious question may be properly presented. No such question was raised by defendant, and it has been assumed that the meritorious question was properly before the court. In this case I ignore the fact that complainant, Hitchcock, is a dry trustee and that counsel have no claim against him for compensation. He acted merely for convenience. The real beneficial owner of the stock is the mother of one of counsel (Mr. Cheyney), and although counsel may not have intended to charge her if unsuccessful, yet this does not dispose of the matter, for as I will hereafter point out the question as to whether the corporation should compensate counsel is one purely of equity. That counsel did not intend to charge a client if unsuccessful in a suit of this kind is of the utmost importance. It makes it incumbent upon the court to fully investigate to determine if the suit be of the nature commonly known as strike suits. And the caution with which this court proceeds in actions where there is suspicion that the stockholder is not acting in the real interest of the corporation is illustrated by *General Investment Co.* v. *Bethlehem Steel Co.,* *102 Atl. Rep. 252; 88 N. J. Eq. 237.* In that case an appeal was taken to the court of errors and appeals. An application for a stay of the order of the court dissolving the temporary restraint was made. It was denied. The appeal was then, I understand, abandoned. For reasons which are apparent I think, from what I shall hereafter state, this case is not within that class.

In reaching a determination it is useful to consider the reasons which actuated the court in proceeding under the statute to appoint a receiver. They will be found embodied in written conclusions filed, not reported (and which will not be reported because of their length). The court held that, first, the bill filed in the district court alleging that the corporation was in such financial condition as that it could not meet its maturing obligations as they matured and that if creditors were permitted to resort to legal process the business would be immediately discontinued and the assets of the defendant sacrificed, showed a condition of insolvency within the meaning of our statute (67

*N. J. Eq. 602; 84 N. J. Eq. 415; 85 N. J. Eq. 181; 71 N. J. Eq. 70; 73 N. J. Eq. 286*), which would justify an adjudication of insolvency and the appointment of a receiver; second, the bill in the district court and the proofs before this court showing that the business of the company had been conducted in such a manner as that it had been obliged to resort to a moratorium to protect its assets; that the management of its affairs had been for nine months in the hands of a receiver of a foreign court; that its stock had declined on the market from ninety in 1912 to five in 1917; that no dividends had been declared since 1914, and that its working capital was almost exhausted, disclosed that the business of the company had been conducted at great loss and greatly prejudicial to the interest of its stockholders, so that its business could not be conducted with safety to the public and advantage to the stockholders within the meaning of section 65 of an act concerning corporations, as amended (*P. L. 1912*, at *p. 535*); third, to bring a case within the language of section 65 as amended it need not appear that there has been either fraud or mismanagement; fourth, the effect of the decree of the district court being to take from the corporation all of its assets and to remove from its stockholders the power to manage its affairs through directors without in anywise affecting the corporate liabilities, there was a complete suspension of business; (attention was drawn to the distinction between the position occupied by the receiver acting under the order of the district court and the position which would be occupied by a receiver appointed under the statute of this state. Under the statute, the receiver represents the corporation and its creditors and stockholders, he exercises all of the privileges and franchises of the corporation; has title to all of its property; becomes, to all intents and purposes, the corporation plus. The receiver appointed by the district court does not stand in the same position; he has, at most, custody and control over assets of which the corporation, as an entity, has been deprived; he has no title unless title has been conferred upon him by the corporate act. The corporation as such remains liable for all liabilities whatever the outcome of the litigation may be. Payments through

the receivership reduce them only *pro tanto*.)   Fifth, when the directors and officers of the company appeared in the district court and consented to the appointment of a receiver and the transfer by the corporation to the receiver of its assets, they deliberately violated the provisions of sections 63 and 64 of an act concerning corporations (*2 Comp. Stat. p. 1638*).   In response to the plea of defendant that this court should not appoint a receiver, I said: "Our legislation requires that, upon the happening of insolvency, the directors and officers shall be under certain disabilities and certain obligations and the assets shall be dealt with in a certain way and distributed in a certain manner.   The method of judicial procedure in this court and in the federal courts is essentially different.   Our judicial policy requires that before any act is done which will affect the interests of creditors and stockholders, the creditors and stockholders should have notice.   There are certain statutory powers which are vested in the receiver and which he may exercise without the sanction of the court and for the performance of which he is answerable to creditors and stockholders as any other trustee.   Indeed, it has often been remarked by Vice-Chancellor Garrison from the bench that an order permitting a receiver to perform a certain act without notice to creditors and stockholders is, as to them, as if it had never been made; that it afforded no protection whatever to the receiver.·  The federal courts have adopted the practice of authorizing the receiver to perform acts, part with property, borrow money and pay out money without notice to other than the defendant corporation or its representatives, or, in some instances, to committees which have been permitted to intervene on behalf of creditors and stockholders.   It seems to have been considered in the federal courts that the corporation represents the creditors and stockholders.   As a matter of technical law it may, but where, as in this case, as is conceded, and in most cases of similar nature, the application for the appointment of a receiver is made with the acquiescence, if not at the instance, of the directors and officers, it seems to me that in no true sense can the corporation be said to represent its creditors and stockholders.   It may be said that an act of the receiver in the federal courts, even if approved by the court prior

to its taking place, is still open to attack by creditors or stock-holders upon the passing of the final accounts, or at some other time. The creditor and stockholder in such event is not only under the necessity of attacking an act of the receiver, but an act approved by the court. Whatever may be the actual merits of the two systems, our policy is clearly indicated by our legis-lation and our adjudicated cases. Again, it is the policy of our law that a business incorporated under the law of this state shall be managed by a board of directors and officers. These officers and directors are responsible for the performance of their trust and are subject to certain statutory obligations. In the instant case, the officers and directors have completely abdicated their functions, and the business of the corporation has been, since September, 1917, managed and controlled by an officer, over whom our statute and policy cannot extend, and over whom the courts of this state have no control, no matter to what ex-tent his acts may affect the internal affairs of the corporation.

"Whether this company should, under the conditions existing in September, 1917, and now existing, be permitted to resume its business and continue its operations, has become a matter for determination by the courts of this state governed by the policy of this state.

"The reasons which actuate me in, at this time, appointing a receiver are that: the corporation being enjoined from exercis-ing its privileges and franchises, it is contemplated by the leg-islature that there should be in the place and stead of the cor-poration a statutory officer appointed by the court, with power to exercise such privileges and franchises, and charged with the duty of protecting creditors and stockholders, and of enforcing in their interest and in the interest of the public, the provisions of the statute under which the company was incorporated; there are, or may be, assets within this jurisdiction or other jurisdic-tions, over which the receiver in the federal court cannot obtain control; plans of reorganization may be proposed which should be subject to the scrutiny of the receiver and of this court; the jurisdiction of the federal court is, as indicated by the allowance of a writ of *certiorari* by the supreme court of the United States, at least arguable, and it may, at any time, be necessary for a

CASES IN CHANCERY, 1918.        449

89 *N. J. Eq.*   Hitchcock *v.* American Pipe & Construction Co.

receiver here appointed to intervene; the jurisdiction of the federal court resting primarily upon consent, the affairs of the corporation cannot in many instances there be administered with any effect without the consent, and in some instances the affirmative act of the corporation, and the moment the disabling decree is made the corporation is deprived of its power to act in any respect whatsoever without the approval of this court; it will be necessary in the administration of the affairs in Pennsylvania that the corporation be represented by someone empowered to act for it; it may be that under the statute, this court can neither permit the company to resume its business or dissolve it unless a receiver be appointed." I further said:

"Before concluding, I desire also to point out that it is the policy of our law when a corporation has become insolvent that no preferential payments be made. Creditors should be paid *pro rata*. In the administration of the affairs of this corporation in the federal court certain of the creditors are being paid and certain are not. If a condition of bankruptcy should intervene, the result will be that during the time that this company has, while in this insolvent condition, been gradually liquidating its debts, preferences will have been created."

When complainant, Hitchcock, intervened in the district court in Pennsylvania and attacked the jurisdiction of that court he did so not in his own right but in the right of the corporation. He did that which the management ought to have done. His act was made necessary by the bold violation on the part of the officers and directors of the provisions of sections 63 and 64 of our statute. The difference between the action of the directors in this case and the action of directors in consenting to the appointment of a receiver by this court can no better be expressed than in the language of Vice-Chancellor Stevenson in *Elm* v. *International Steam Pump Co.*, as follows:

"The duty imposed by this section is not often performed, and for this reason: It is generally more satisfactory, when a corporation gets into the condition that this corporation was in, to have a receiver appointed as quickly as possible. Consequently, instead of within ten days calling together the stockholders, the honest directors procure the institution of the action

which now has been brought in this court, and .which any stockholder or any creditor can bring; and then they come before the court, with the corporation, and they consent to an immediate, summary hearing. The statutory decree is passed, and thereupon, the statutory receiver is appointed; and counsel will bear in mind that no statutory receiver can be appointed until after the disabling decree, the final decree is passed."

The action of complainant, Hitchcock, was necessary because of the fact that the directors consented to appear in the district court. The jurisdiction of that court, if jurisdiction it had, rested entirely on this consent and that consent, in view of the consequences which followed, was a violation of the duty and obligation of the directors to the creditors and stockholders and to the state of the creation of the corporation imposed upon them by its law.

The case was within that class in which a stockholder is permitted to sue or defend in the right of the corporation (7 *Rul. Cas.* §§ *308, 311*); in such a suit the stockholder actually represents the corporate right; the decree is *res adjudicata* against the corporation and its stockholders; the proceeds, if any, go to the benefit of the corporation. *Ellerman* v. *Chicago Railway Co., 49 N. J. Eq. 217; Willoughby* v. *Chicago Railway Co., 50 N. J. Eq. 656; Appleton* v. *American Malting Co., 65 N. J. Eq. 375; Goodbody* v. *Delaney, 80 N. J. Eq. 417.* It is settled that a request on the corporate management to act is not necessary where it is apparent that it will not act, as in this case. *Appleton* v. *American Malting Co., 65 N. J. Eq. 375.* I can conceive of no good reason why, if the suit is one which should have been brought, or the defence is one which should have been made, by the corporation, the expense of the suit or of the defence should not be borne by the corporation, the benefits accruing to the corporation. I have found no case bearing directly upon the proposition. The reason unquestionably is that, in most cases, there has been a sharp conflict of opinion between the corporate management and the stockholder which has led the courts to remit the stockholder for his compensation to the proceeds of the litigation. The courts have practically said to the stockholder, that, differing with the management, he must proceed at his

CASES IN CHANCERY, 1918.                451

*89 N. J. Eq.*   Hitchcock *v.* American Pipe & Construction Co.

own risk, and the farthest the courts would go to aid him would be, if the action appeared *bona fide,* to permit him to sue in the corporate right.   In the case at bar I think there would be little difficulty if the case in the supreme court were argued and decided favorably to complainant, Hitchcock, but the course the proceedings has taken has rendered the determination of the supreme court of academic interest only except upon the question of costs involved.   If it were proper to attempt it, I think that that court could not be induced to decide the case where the issue involved the matter of costs only.   Be that as it may be, defendant corporation has insisted, as a condition to the determination by this court of the right of the claimants, that the *certiorari* in the supreme court should be dismissed.   Such dismissal, however, is without prejudice to the rights of the parties. The difficulty arises because complainant, Hitchcock, so far, has been unsuccessful in the federal courts, but I conclude that this is not determinative.

Whatever the holding of the federal courts may be as to the jurisdiction of the district court my conclusion is that it was the duty of the directors and officers of the corporation, in view of the provisions of the sixty-third and sixty-fourth sections of our statute and of the policy of our law, which contemplates that a corporation created under our statute should be governed by a board of directors subject to being called to account for their acts by our courts, which policy is violently opposed by proceedings which vest the control of all of the assets for an indefinite time in an appointee of a court of a foreign jurisdiction and which divest the corporate managers of all control over its assets. to decline to submit to the exercise of such jurisdiction, and they having failed to do so, the stockholder properly intervened in the right of the corporation for the purpose of undoing the acts of the officers and directors in consenting to the exercise of such jurisdiction.   If application had been made to this court, after knowledge that the directors contemplated filing the answer they did in the district court before it had been filed, to enjoin such action, I should not have hesitated in granting such an injunction, nor would I have hesitated, if it appeared necessary to effectively prevent its being filed, to appoint a receiver, and if

application had been made after the answer had been filed for the appointment of a receiver, I should not have hesitated in appointing a receiver, because of the performance of the act and of the fact that the assets were in the control of a foreign receiver, either under the statute or the ordinary jurisdiction of this court (*Morse* v. *Metropolitan Steamship Co., 87 N. J. Eq. 278*), and I should probably have directed him to intervene in the district court and do that which complainant, Hitchcock, has done, in which event, of course, the charge would be one which would be borne by the corporation.

When I first approached this problem I assumed that, before claimants could succeed, they must prove a debt which might be recovered against the corporation in an action at law. I was in error. When the stockholder sues or defends he acts as trustee for the creditors and stockholders represented by the corporate entity. The corporation, in a suit brought by a stockholder, is made a party because it represents creditors and stockholders as the *cestui que trust* of the stockholder suing, so, where the stockholder defends, the corporation being already a party, he represents as trustee for the time being and in reference to the particular right the creditors and stockholders and their usual representative, the corporation. Rights between a trustee and *cestui que trust* are of equitable cognizance, so that the question whether the corporation should bear the expense incurred by the stockholder in such an action is one purely of equity and to be determined by what ought to be done in fairness and equity.

The success or failure of the suit or defence is not determinative. Success raises a very violent presumption that the suit or defence should have been brought or made and that the corporation should bear the expense. Failure raises the reverse presumption, but it is not conclusive. In this case, assuming that the district court and the circuit court of appeals were right and that the district court had jurisdiction, I think the defence should have been made and that the corporation should bear the expense, but I am prepared to go further. The question involved in the Pennsylvania litigation was one of jurisdiction. The insistence was that the district court had no juris-

CASES IN CHANCERY, 1918. 453

*89 N. J. Eq.*    Hitchcock *v.* American Pipe & Construction Co.

diction of the subject-matter of the litigation. The question was one purely of law, its determination did not require a finding of fact. A judgment rendered by a court having no jurisdiction of the subject-matter is open to collateral attack.

That the district court had no jurisdiction of the subject-matter I think is clear. The bill prayed for no specific relief other than the appointment of a receiver. It is conceded, of course, that a court of equity may take under its control assets of a corporation, foreign or domestic, with the view to ultimate distribution of such assets among creditors and may appoint receivers of a solvent corporation in some instances where, for one reason or another, the board of directors ought not to be left in control. *Morse* v. *Metropolitan Steamship Co., supra; Atwater* v. *Baskerville, 104 Atl. Rep. 310; 89 N. J. Eq. 121.* But I have never, unless the instant case is an exception, heard of a case in which it was contended that a court of equity might by judicial fiat prescribe a moratorium in favor of a corporation. When a court takes under its control and puts in *custodia legis* assets of a corporation with a view to ultimate distribution, creditors and stockholders are provided with a remedy for the enforcement of their demands. But where a court appoints a receiver merely to take the place of the management of the corporation to act for an indefinite time, creditors and stockholders are deprived of their ordinary legal remedies and no adequate substitute provided. There is a distinction between the power which is exercised by a court, where a bill is filed for the winding up of the affairs of a corporation or charging that the directors of a corporation ought not to be left in control, although the corporation may be solvent, in appointing receivers and in refraining from directing immediate disposition of the assets pending rehabilitation or the election of a proper board, as the case may be, and the power which the federal courts sought to exercise in the instant case in appointing a receiver under a bill where no ultimate relief of any kind is asked. That the bill was not considered as praying for any ultimate relief is clearly indicated by the opinion of the district court. It is too clear for argument that the appointment of a receiver is never justified except as incidental to other relief. *Hogsett* v. *Thompson,*

*258 Pa. 85.* The remarks of the Pennsylvania court in that case, although there the appointment of a receiver for an individual was concerned, are applicable to the appointment of a receiver of a corporation. The statute of Pennsylvania referred to by the circuit court of appeals, the act of June 16th, 1836 (*P. L. 789 § 13 ¶ 5*), conferring upon the several courts of common pleas the jurisdiction and the powers of a court of chancery and the supervision and control of corporations other than those of a municipal character is construed by Judge Sergeant, in *Commonwealth* v. *Bank of Pennsylvania, 3 W. & S. 184* (at *p. 193*), as follows: "This gives the courts all the powers and jurisdiction a court of chancery over corporations, to be exercised in the ordinary mode in which a court of chancery acts, whether by bill, injunction or otherwise, as the equity of the case may require." In the case of *Blum Bros.* v. *Girard National Bank, 248 Pa. 148,* relied upon by the federal courts, the appointment of the receiver of the -foreign corporation was incidental to a distribution of its assets for the benefit of creditors and others ultimately entitled thereto. This case is in line with what I said in *Atwater* v. *Baskerville, supra.* The determination of the circuit court of appeals for the third circuit is in direct conflict with that of the circuit court of appeals for the second circuit in *Maguire* v. *Mortgage Co. of America, 203 Fed. Rep. 858,* although the circuit court of appeals for the third circuit stated that this was not so. This statement of the circuit court of appeals for the third circuit must be accorded little weight in view of the allowance by the supreme court of the United States of its writ of *certiorari.* Even if the statute of Pennsylvania may be considered as investing in its courts of equity visatorial powers over corporations, and even if these visatorial powers may be extended to foreign corporations, visatorial powers cannot be extended to include the right to appoint a receiver where no charges of mismanagement are made, where no ultimate relief is prayed for, solely for the purposes of permitting the corporation's affairs to be managed, for an indefinite space of time, free from attacks by creditors or others, in order that it may be determined whether or not the corporation may, at some future time, be in a position where it can proceed in

the ordinary way. The rule in this state is in accord with the general rule. *Goff* v. *Electro-Pneumatic Brake Co., 104 Atl. Rep. 193; 89 N. J. Eq. 258.* And I point out that nothing that I have said or intimated is to be considered as opposed to what I have already said in *Atwater* v. *Baskerville, supra,* and *Clark* v. *Painted Post Lumber Co., 89 N. J. Eq. 409.* I have no doubt of the power of this court to appoint a receiver of a foreign corporation and wind up its affairs, so far as assets within this state are concerned, and to deal with assets within the state, under our statute, at the suit of a creditor or stockholder. Nor would I have any doubt but that the Pennsylvania court might, if any statute gave it jurisdiction, act upon the assets within its control, at the suit of a stockholder.

I am of the opinion that the district court had no jurisdiction to make the appointment under the bill filed in that court and that if it is necessary to do so this court may, under the circumstances of this case, disregard the determination of the federal courts to the contrary.

The receiver appointed in this jurisdiction was a general receiver under the statute. The determination of rights in the assets of the corporation, at least in such assets as came within the control of the receiver, became a proper subject-matter for determination in this court. *Reynolds* v. *Stockton, 140 U. S. 254; 35 L. Ed. 464.* The collateral which is now in the hands of the receiver as trustee may be considered as assets within his control. The course which the case has taken, which makes it impossible to secure a final determination by the supreme court of the United States, makes it necessary that this court should, if essential to determine the rights of claimants, decide whether claimants or the corporation was right in the Pennsylvania litigation.

It is suggested that claimants could not recover against the corporation under the Pennsylvania law. No decision in Pennsylvania to this effect has been brought to my attention. One of the witnesses for defendant testified that there was no law or statute in Pennsylvania under which recovery could be had. This at most is saying that the witness knows of no such rule. It is far from saying that it has been decided otherwise. I must

assume, therefore, that the rule in Pennsylvania would, if the case arose, be the same as that which I now conclude is the rule in this jurisdiction.

The result is that claimants are entitled to be paid reasonable compensation for the services rendered in the Pennsylvania litigation.

The only question in my mind is, and upon this I express no opinion because the matter is not properly before me, whether the officers and directors whose improper acts caused the expense should not be obliged personally to bear the burden. And it may be a question whether they ought not to be made personally to bear the entire burden of the expenses incurred due to the Pennsylvania receivership.

There was offered in evidence a letter dated July 10th, 1918, addressed by Mr. Cheyney, of counsel with complainant, to Mr. Bracken, of counsel with defendant. The letter expressed dissatisfaction with the outcome in this court and requested an appointment in order that the situation might be discussed and the litigation ended. The letter was written after I had declined to permit counsel for complainant to act as counsel for the receiver and counsel were undoubtedly disappointed. They had, figuratively speaking, been patted on the back for the work they had done and then the court had refused to permit them to occupy a position from which they might receive some compensation. My refusal to permit them to act as counsel for the receiver indicated no lack of faith either in their integrity or ability. In cases of this nature, where the appointment of a receiver is the outcome of litigation, it is essential, in order that the best results should be achieved, that not only the receiver but his general counsel, if any be retained, should be impartial and so unidentified with the preceding litigation as not only to be in fact impartial, but all parties interested in the corporation should be convinced of his impartiality. I am speaking now of the receiver and his general counsel. I do not mean to intimate that in a proper case the receiver may not retain counsel previously identified with the litigation, to conduct litigation on behalf of the receiver. The result which has been accomplished in this case might have been accomplished if counsel for

complainant had been permitted to act as counsel for the receiver, but the court was not justified in taking any chances. I do not think that the letter of counsel, taken in connection with the circumstances, indicates that the litigation was of a strike nature.

The question is as to the amount to be allowed.

I referred the matter to the receiver, Mr. Frank P. McDermott, as master, to take testimony of experts, particularly directed to the Pennsylvania end of the litigation. Four Pennsylvania lawyers, apparently of equal standing, were produced before the master, two on each side. The two for claimants testified that the services rendered were worth in the neighborhood of $10,000, while the two for the defendant testified that the services were not worth more than in the neighborhood of a $1,000. It would seem that even in the legal profession it is impossible to get expert testimony, where the experts are produced by the parties, which can be relied upon. My view is that the figure fixed by the experts for defendant is utterly ridiculous. The services rendered by counsel involved intervention by a stockholder in the district court in Pennsylvania, argument upon the question of the jurisdiction of that court, appeal to the circuit court of appeals; preparation of briefs and argument in that court; application for a writ of *certiorari* in the supreme court; preparation of a brief thereon; counsel were opposed by some of the most astute members of the Philadelphia bar. The question was one of great importance and apparently of considerable difficulty as indicated by the decisions of the district court and the circuit court of appeals adverse to claimants' position, and by the allowance of a writ of *certiorari* by the supreme court.

I have examined the briefs both *pro* and *con* and I am convinced that the question could not have been better presented. There is no yard-stick to measure the amount which should be allowed for compensation of counsel. In the case of *Soper* v. *Bilder, 100 Atl. Rep. 858; 87 N. J. Eq. 564.* I indicated what elements might properly be taken into consideration, the importance and difficulty of the question involved, the ability of

counsel, the amount of labor, the amount involved, the result. In the Pennsylvania litigation there was more involved than mere protection of the rights of the holder of sixty-eight shares of stock. The proper administration of the affairs of a corporation with assets of several millions of dollars was the real question involved.

So, with respect to the allowance which ought to be made to counsel for services rendered in this court. The case was not that of an ordinary application for the appointment of a receiver, nor was it that of the ordinary litigated case where there is no question of jurisdiction or discretion, but merely a question of fact as to insolvency. So far as counsel knew at the time the application was made there was no precedent in this state. Reference to *Gallagher* v. *Asphalt Co.,* 67 N. J. Eq. 441, seemed to indicate that this court might properly, even if it adjudged the corporation insolvent, decline to appoint a receiver because of the appointment of a receiver in the Pennsylvania jurisdiction. Counsel had no knowledge of the unreported case of *Elm* v. *International Steel Pump Co.,* in which Vice-Chancellor Stevenson adjudged a corporation, the administration of the affairs of which had been taken over by the federal district court in New York, insolvent upon a creditor's bill, for substantially the same reasons that I appointed the receiver in this case. Counsel were therefore not only obliged to be prepared to prove the corporation insolvent but also to convince the court that under the circumstances any discretion which might rest in this court should be exercised in favor of the appointment of a receiver. The application was resisted by eminent counsel both of this state and Pennsylvania, and every consideration which could be thought of to induce the court to decline to act was brought to bear by counsel. The decision of this court, although it came hard on the heels of the argument, was not a snap decision, but carefully considered. I had the advantage of counsel for complainant because I was in the *International Steam Pump Company Case* and secured the appointment of the receiver there. The result achieved in this court was not only the appointment of a receiver but the vindication of the public policy of this state.

It is hard for judges in considering the question of the amount of counsel fees to keep out of their minds the amount of their own compensation. They are prone to forget that the assumption is that lawyers of more than mediocre ability will remain on the bench because of love of the exercise of power, of interest in the work, of the dignity of the position, of its comparative permanency, without regard to the amount of compensation. That this assumption is warranted is indicated by the calibre of the overworked judges of the federal district courts with their ridiculously inadequate salaries and the figure to which it is suggested that congress should raise their salaries, which, while not so *inadequato,* is yet wholly inadequate. It must not be overlooked that the lowering of the value of the dollar affects lawyers as well as any other individuals. The value of the dollar consists not in the dollar mark but in what it will purchase, and there is no doubt whatever in my mind but that a dollar in the hand of a lawyer to-day is not worth more than seventy cents was worth in 1914. When we apply this to the figure fixed by the two experts in Pennsylvania, the ridiculousness of the amount which they fix is demonstrated. A jury of laymen or an unbiased member of the bar in active practice is probably a better judge of the value of legal services than a court. In this case I have the judgment of a master who has no interest in the matter. He had been in active practice for years and has acted as advisory master in this court upon many occasions. He has the reputation of charging in his own practice full value for his services, but no more. My judgment coincides with his and the amount which will be fixed for compensation to counsel in the Pennsylvania litigation will be $5,000, and for services rendered to complainant in this court $2,000. The master will be allowed $100. Complainant will be allowed his taxed costs, and there will be included in the taxed costs the stenographer's fees for the services rendered to the master, amounting to $27.50.

I have excluded from the allowance to counsel for services rendered in this court any compensation for services compensated for by the amount allowed for the Pennsylvania litigation, and I have taken into account in fixing the amount allowed for the Pennsylvania litigation the fact that counsel get $2,000 as an

indirect result of the litigation in Pennsylvania for services rendered in this court. If this were not taken into consideration the allowance to counsel for work performed in Pennsylvania would be greater. Claimants will be directed to dismiss their *certiorari* in the supreme court, but not until after actual payment to them of the amounts fixed.